PRESCOTT & NORTHWESTERN RAILWAY Co. *v.* HOPKINS, ADMINISTRATOR.

Opinion delivered January 31, 1916.

1. EVIDENCE—WRONGFUL DEATH—STATEMENTS OF DECEASED—ACTS AS TRESPASSER.—Deceased was killed in a railway accident. In an action for damages growing out of the same, the defense was set up that deceased, although an employee of defendant, was a trespasser on the train on which he was riding when the accident oc-

curred. *Held*, evidence of statements of deceased, showing his knowledge of the rules that he could not ride on the train, and that he said he intended to ride anyway, was admissible, as showing that he was a trespasser in riding on the same.

2. NEGLIGENCE—WRONGFUL DEATH—KNOWLEDGE OF RULE.—Deceased, while riding on defendant's train, in violation of the rules of the railway company, sustained injuries resulting in his death, *held*, under the evidence the deceased knew of the rule on the day in question, and of the effort of defendant, through its foreman, to enforce the rule.

3. NEGLIGENCE—RULES OF CORPORATION—REINSTATEMENT OF ABROGATED RULE—INJURY TO SERVANT.—Although a corporation may have acquiesced in the violation of its rules by certain persons, down to the day of deceased's injury, constituting an abrogation of the rules, the corporation has the right to reinstate the rules, and to insist on their enforcement whenever it sees fit.

4. NEGLIGENCE—VIOLATION OF RULES—TRESPASS.—One who takes passage on a work or logging train not purporting to carry passengers, in conscious violation of the rules of the company, and with the express purpose of riding, notwithstanding any efforts that might be put forth for the enforcement of the rules, is a trespasser.

5. NEGLIGENCE—WRONGFUL DEATH—BURDEN OF PROOF.—In an action by appellee to recover damages for the wrongful death of deceased, *held*, where the train upon which deceased was riding was a logging or work train, and deceased, not being a member of the crew operating the train, the burden was on appellee to show that deceased had a right to take passage upon the train. It is the duty of one who desires to take passage upon such train to inquire whether he may do so.

Appeal from Pike Circuit Court; *Jefferson T. Cowling,* Judge; reversed and dismissed.

### STATEMENT BY THE COURT.

This suit was instituted by the appellee as the administrator of the estate of W. E. Sanders, deceased, against the appellants, Prescott & Northwestern Ry. Co., hereinafter called the Railway Company, and the Ozan Lumber Company, hereinafter called the Lumber Company, in which appellee sought to recover for the benefit of the widow and children of Sanders, damages which he alleged accrued by reason of the joint negligence of the appellants resulting in the death of Sanders.

Appellee alleged that the Lumber Company owned and operated a large saw mill at Prescott, in Nevada County, Arkansas, and had its principal place of business there, and that it maintained a branch office in Pike County, Arkansas; that the Railway Company was a subsidiary corporation to the Lumber Company and operated a line of railroad from Prescott into Pike County; that the principal business of the railway company was to transport logs for the lumber company; that the line of railroad ran into the interior of Pike County on the west side of the Little Missouri River, where it hauled off logs on a large tract of land belonging to the lumber company; that the lumber company, having cut out the timber there and wanting to move so as to log a tract of timber on the east side of the river, made a contract with the Memphis, Dallas & Gulf Railway Co., and the Dodson Construction Company whereby they were authorized to use the line of the Memphis, Dallas & Gulf Railway Co. to haul the logs from the east side of the river; that the trains in hauling these logs were jointly operated by the lumber company and the railway company; that on the 9th of February, 1914, it was the custom of the employees of the lumber company to ride on the log trains, which custom was known to and acquiesced in by the officers and managers of both appellants; that on that day Sanders was in the employ of the lumber company, cutting and hauling logs, and that it became necessary for him to go from the lumber company's camps to Murfreesboro and he took passage on appellant's log train with the assent of the crew in charge thereof; that the train consisted of a locomotive and a number of flat cars; that the engine was run with the tender in front; that the engineer in charge of the train was inexperienced and incompetent; that the track was in bad condition; that by reason of the negligence of the railway company in running the train, with the tender in front and at an excessive rate of speed, under the above conditions, the track slid off the dump and the engine turned over, catching Sanders and so injuring him that he died five days later. Ap-

pellee asked judgment on account of damages for pain and suffering endured by Sanders before his death in the sum of $10,000, and for pecuniary injuries on account of loss of contributions to his wife and children in the sum of $15,000.

The appellants answered jointly, in which they denied the material allegations of the complaint, and, among other things, set up the defenses that Sanders went upon the locomotive without right and in violation of the rules and regulations of the appellants, and that he knew he was violating the same when he got upon the locomotive; that he was on the locomotive at his own convenience and pleasure and not in the performance of any duty to the appellants; that he was a trespasser in thus going upon the train, and that he assumed the risk of doing so.

At the conclusion of the testimony the appellants prayed for instructions directing the jury to return a verdict in their favor, which the court refused. The jury returned a verdict in favor of the appellee in the sum of $8,000.

One of the grounds of the motion for a new trial was that the verdict was contrary to the evidence. Another ground was that the court erred in refusing appellant's prayer for a directed verdict. The motion for a new trial was overruled; judgment was rendered against appellants, and they have duly prosecuted this appeal.

*J. C. Pinnix* and *McRae & Tompkins*, for appellants.

Sanders was a trespasser upon the train and appellant owed him no duty and were not liable in damages for his injury. He violated the rules of the company knowingly and whatever the custom of the company had been in allowing employees to ride upon its trains, it had the right to reinstate the rule and insist on its enforcement whenever they saw fit. One who takes passage on a train not purporting to carry passengers, in conscious violation of the rules and with the express purpose of riding against any effort to enforce the rule, is a trespasser and can not recover. A verdict should

have been directed for defendant railway company. 114
Fed. 123-132; 76 Ark. 106; 3 Labatt Mast. & Serv. 3010;
48 Ark. 333, 348; 110 Mo. 387; 58 Ark. 206, etc.

*Langley & Steel* and *W. P. Feazel,* for appellee.

Liability in this case is predicated upon the theory
that it had long been the custom of the company to per-
mit employees to ride on their work trains; that this
custom was acquiesced in by the roadmaster and general
foreman and that deceased was not therefore a tress-
passer. 96 Ark. 464; 112 *Id.* 446; 115 Ark. 473; 99 Ark.
490. A custom among employees to violate a rule of a
railroad company known to and acquiesced in by said
company, will be held to abrogate the rule. 172 S. W.
829. The custom was never abrogated by the company.

The statement of deceased were not competent tes-
timony. Kirby's Digest, § 3094; 16 Cyc. 1028 B; 21 Ark.
79; 13 *Id.* 295.

SMITH, J. (after stating the facts.)  A majority of
the court has reached the conclusion that under the un-
disputed evidence Sanders, at the time of the injury
resulting in his death, was a trespasser upon the train,
and that therefore the appellants owed him no duty and
were not liable in damages for his injury. The conclusion
makes it unnecessary to discuss the other numerous ques-
tions presented on this appeal, and we will proceed to
set out and discuss only the evidence relating to the
issue as to whether or not Sanders, at the time of his
injury, was a tresspasser.

Witness Lowe, on behalf of the appellee, testified on
this issue substantially to the effect that, acting under
instructions from one Fletcher Smith, who had the con-
trol and management of the appellant's business, especial-
ly the operation of their log and work trains, he was
bringing the work train, consisting of two flat cars and
the engine, from the log camp to Murfreesboro; that San-
ders was there when they started; that there was five or
six negroes on the cab and seven or eight on the cars.
There were some negro women in the coal car. The negro

men who were on the cab and cars belonged to his crew. Neither witness nor anyone else made any objection to Sanders riding on the train. Ever since witness has been on the job it had been the custom for the employees of the company to ride on the work trains or log trains, and had been the custom for log cutters and loggers to ride on this train, and witness never heard any objection to it. The employees rode these trains when they were not going to and from their work. On one occasion a lot of camp hands were witnesses and they went back to the camp on the flat cars of the log train. Witness testified, over the objection of counsel for appellee, that after they had started he heard Sanders say as follows: "I may have to fight Fletcher Smith to ride this train, but I am going over there." There was no notice sticking up in the cab containing a warning that nobody could ride. The injury occurred on the morning of February 23, 1914. This train had been running over there since about the 24th of January. Witness stated, "If I am not mistaken it was the 24th of January when they brought the first steel on this side." Witness had never seen Fletcher Smith run working men off of the engine. He had never seen Fletcher Smith object to anyone riding these trains or the engine except one gambler and one hobo. Never heard Smith say it was against the rules to ride those trains and had never been advised by anybody connected with the compny that it was against the rules.

Witness General Smith testified that a number of times he had seen plenty of people riding on appellant's train, on this side of the river and the other side, when Fletcher Smith was on the train and he never heard him make any objections to anybody riding. He had seen other employees besides those who were operating the trains, and others, riding thereon. If there was a rule against anybody riding except the men connected with the train, witness knew nothing about it.

Witness Littlefield testified that he had worked for the appellant, driving a log team, off and on for about three years. During the time he was working he was

in the habit of riding the work train whenever he got ready—''just anywhere over the woods and down to the commissary and all around.'' No objection was ever urged to it. He rode the train when Fletcher Smith was on it and he never heard him object to it. Smith was the general boss out there. Things went according to his orders. Witness worked a month or a little better on the side of the river where the injury occurred, but was not at work when Sanders was injured.

One witness, a tie maker, testified that he never heard of it being against the rules for employees to ride the logging and work trains until after Sanders was killed.

Many other witnesses testified to the same effect, but the above states the evidence as strongly in favor of the appellee as the jury were warranted in finding, and it tends to show that there was a custom upon the part of appellants to permit their employees, who were not assisting in the operation of the train, to ride on these logging and work trains on business for the company and when they were not about the company's business; also to permit those who were not employees to ride on these trains. The jury might have found from this testimony that Fletcher Smith, who was the roadmaster of the railway and the general foreman of the lumber company, and who was charged with the enforcement of the rule, knew of this custom and acquiesced in it, even after the appellants had moved their logging operations to the east of the river, where the injury occurred.

On the other hand the appellants introduced witnesses whose testimony tended to prove that before appellants moved their logging operations to the east side of the river, where the injury occured, that it was the custom to carry passengers on their logging and work trains, but that after they moved their logging camps to the east side of the river the custom of permitting passengers to ride on their trains was abandoned, and that after appellants had moved to the east side of the river no person, whether employee or otherwise, was

permitted to ride on their logging and work trains except those employees who were handling the trains. The appellants were using the Memphis, Dallas & Gulf tracks, and the contract with that company provided that no persons whomsoever except the train crews should be permitted to ride on their logging and work trains, and that a failure to observe the provision on the part of the appellants would forfeit their right to use the track of the M. D. & G. Ry. Co.; that in pursuance of this contract warning notices were posted in all the engines and there was a warning notice in the engine on which Sanders was riding to the effect that no employee except members of the regular train crew would be permitted to ride on the locomotive or the car of that train, except in a car provided for that purpose; that on the pilot beam of the engine on which Sanders was riding, and at the back end of the tender there was posted a sign "Keep Off"; that appellants' trainmen were instructed by appellants' foreman and manager, Smith, not to let anyone ride their engines; that the employees were furnished a time card on which was printed a rule of the company to the effect that no one was permitted to ride on the trains except the employees having charge thereof; that the engineers and conductors were held responsible for violations of these rules.

John Karber, a witness on the part of the appellants, testified that he was an engineer on one of their log trains at the time Sanders was injured. Sanders told witness the day before the wreck that he was going over to Norvell and figured going on the work train. Sanders asked witness whether or not he could go over, and witness replied, "I don't know; that it was against the rule." This witness further testified that it was against the rules of the company for a man to ride on the work trains, and that this was generally known among the men and generally discussed among them.

Witness Thornton testified that he was an engineer in the employ of the Ozan Lumber Company; that in the week before Sanders was killed Sanders tried to ride on

witness' engine and witness told him that he could not carry him, that it was against the rules. Witness was asked this question: "Now what did he say about coming to Murfreesboro? Ans. "He said he was going to come up here and he expected he would have to have a fight with Fletch to ride. I told him I didn't think he could ride at all. There was no way for him to go, and he said he was going if he had to have a fuss."

Witness John Lyons testified that at the time of the injury to Sanders he was an engineer for the Ozan Lumber Company and saw Sanders the morning he was injured. Sanders asked witness to let him (Sanders) ride on the train, and witness states what took place as follows: "I told him it was against the company's rules; that I was not going to run the engine myself. He says, 'Who is going to run the engine?' He asked me if it was Mr. Thornton. I told him no, it was Mr. Smith; Mr. Smith was going to run the engine. Sanders said he just had to go; he said he was going to go; he would scrap Fletcher Smith all the way over there and back."

Witness Wm. Marlow testified that he was in the employee of the lumber company and saw Mr. Sanders on the morning he was killed. Witness relates what took place between Lowe and Sanders as follows: "He (Sanders) said that morning when he came down he wanted to go to Murfreesboro, and Mr. Lowe came to wake us up that morning. We were boarding at Mr. Lowe's. He said he was going over and Mr. Lowe was deviling him something about coming down. He told him he could not come down, and he told him he would fight it out with Fletch." Q. "You say you heard Mr. Sanders say he was coming down here and then fight it out with Fletch Smith?" Ans. "Yes, sir." Witness testified that he was a fireman on one of appellant's trains, and that at that time they had strict orders from Fletcher Smith, the foreman, to keep men off the trains.

Witness Russ Stephens testified that he was in the employ of the lumber company at the time Sanders was killed; saw him that morning before he left the camps.

He told witness that he was going to Norvell. Witness was asked, "What did he say with reference to riding on the train and knowing it was against the rule?" and answered, "He made a statement that he was going over on the engine if he could get on there, and wanted to know who was going to run the engine and some one of us made the remark that Mr. Smith was going to run it, and he said he would go down to the junction, that is, the set-out, and go down as far as Murfreesboro and have it out with Fletch from over there; something like that."

(1)    Now the undisputed testimony shows that it was against the rules of the appellants for employees, not engaged in the work of operating their trains, to take passage on these trains. The only question about which there is a conflict in the testimony is as to whether or not the rule had been habitually violated within the knowledge of those employees of appellants whose duty it was to see that the rules were enforced.

The above testimony of witnesses on behalf of the appellants tends to show that those whose duty it was to enforce the rules informed Sanders that it was against the rules for him to ride on the train on which he received his injury, and it shows conclusively that Sanders declared his purpose to go on this train although he might have "to fight Fletcher Smith", the foreman and manager, who had given directions to the employees in charge of the train to enforce the rules. A majority of the court is of the opinion that this testimony as to the declarations of Sanders, and showing his knowledge of the rules and his purpose to violate the same notwithstanding any protest that might be made by the foreman and manager of appellants, constituted him a tresspasser. Although appellee objected to the testimony as to these declarations of Sanders, it was not hearsay and was competent, as the trial court held, to prove the affirmative fact that he made such declarations.

The testimony was competent because the acts and declarations of Sanders showed that he had knowledge of the rules of appellants and also of the duty and desire

of Fletcher Smith to enforce them. The knowledge of Sanders of the rules and the attitude of his mind towards them were material in determining the issue as to whether or not he was a trespasser. The testimony as to his declarations made just before and at the time of his riding the logging train was in explanation of his conduct in so doing and showed conclusively that such act upon his part constituted him a trespasser.

(2)    The above testimony showed that whatever might have been the custom of appellants in regard to the enforcement of their rules against employees riding the trains prior to the day of the fatal injury to Sanders, that, at least, on that day he had knowledge of the rules forbidding him to ride, and was conscious of the fact that appellants were seeking to enforce the same through their foreman, Fletcher Smith.

(3-4)    Although appellants may have acquiesced in the violation of their rules down to the very day of the injury to Sanders, constituting an abrogation of those rules to that time, nevertheless they had the right to reinstate the same and to insist on their enforcement whenever they saw fit. *Hobbs* v. *Texas & Pacific Ry. Co.,* 49 Ark. 358. One who takes passage upon a work or logging train not purporting to carry passengers, in conscious violation of the rules of the company, and with the express purpose of riding notwithstanding any efforts that might be put forth for the enforcement of the rules, is a trespasser. See *Kruse* v. *St. Louis, I. M. & S. Ry. Co.,* 97 Ark. 137-140; *Purple* v. *Union Pacific Rd. Co.,* 114 Fed. 123-132. See also *St. Louis, I. M. & S. Ry. Co.* v. *Reed,* 76 Ark. 106.

(5)    The train upon which Sanders was riding being a logging or work train and Sanders not being a member of the crew operating such train, the burden was upon appellee to show that Sanders had a right to take passage upon such train. Hutchinson on Carriers, § §

1000-1001; *Eaton* v. *Delaware, L. & W. Rd. Co.,* 57 N. Y. 382, 15 Am. Rep. 513.

It is the duty of one who desires to take passage upon such train to inquire whether he may do so. See cases, *supra; St. Louis, I. M. & S. Ry. Co.* v. *Atchison,* 47 Ark. 74; *Railway Co.* v. *Rosenberry,* 45 Ark. 256-263; 3 Thompson on Negligence, § 2562; Elliott on Railroads, § 1576.

Witness Lowe, who was running the engine at the time Sanders was killed and who had charge of the work train testified that after they started Sanders said, "I may have to fight Fletcher Smith to ride on this train, but I am going over there." This testimony, and the testimony to the same effect by other witnesses, was, in the opinion of the majority, undisputed. There was nothing to justify the court or jury in arbitrarily disregarding this testimony. It conclusively shows that Sanders was a trespasser and that as such the appellants owed him no duty except—not to wilfully and wantonly injure him after discovering his peril, and they were therefore not liable in damages for injury resulting in his death.

The court erred in refusing to grant appellants' prayer for a peremptory instruction, and for this error the judgment is reversed, and as the cause seems to have been fully developed, the same is dismissed.