ST. LOUIS SOUTHWESTERN RAILWAY COMPANY *v.*
McLAUGHLIN.

Opinion delivered June 11, 1917.

1. RAILROADS—INJURY TO TRESPASSER—LIABILITY.—Where one is riding on a train without right, the train operators owe no duty save to exercise ordinary care not to injure the trespasser after discovering him to be in a perilous situation.

2. RAILROADS—INJURY TO TRESPASSER ON TRAIN.—Plaintiff was riding on defendant's train without lawful right and was injured; *held* under the evidence the defendant was guilty of negligence resulting in his injury.

Appeal from Columbia Circuit Court; *Chas. W. Smith,* Judge; affirmed.

*Daniel Upthegrove* and *John R. Turney* of Missouri and *Gaughan & Sifford,* for appellant.

1. The theory of appellant is that appellee was a trespasser; that his peril was not discovered until the injury, and there is no liability unless after discovering

his peril he was wilfully or wantonly injured. 97 Ark. 137, 140-1; 76 *Id.* 106.

2. The law as to discovered peril is well settled. The company is not liable except for wanton, wilful or intentional injury, or the trainmen were guilty of negligence after discovering his peril. 47 Ark. 497; 62 *Id.* 170; 75 *Id.* 579; 83 *Id.* 300; 69 *Id.* 380; 77 *Id.* 401; 76 *Id.* 10; 82 *Id.* 522; 92 Ala. 270; 120 *Id.* 401.

3. The jury disregarded the testimony of the conductor and roadmaster; this they had no right to do. 117 Ark. 483.

4. Appellee's instruction No. 1 was error, as it stated that appellee was in a position of danger and failed to give to the jury the question whether or not appellant's servants knew it. 120 Ark. 394.

*H. S. Powell,* for appellee.

1. There was no error in giving the first instruction for appellee. The clause "which was a position of danger" is not objectionable. The meaning is misconstrued; it is not an assumption of fact by the court. But it states a fact shown conclusively by the testimony and that the train crew knew it. If error, it could not be reached by a general objection; specific objection should have been made. 81 Ark. 187; 87 *Id.* 396; 104 *Id.* 327; 104 *Id.* 196; 103 *Id.* 183; 104 *Id.* 409.

2. Appellant owed appellee the duty of exercising ordinary care for his safety; the train crew knew he was riding on the plow, a place of peril. 89 Ark. 496. The doctrine of discovered peril was ignored by appellant. 83 Ark. 300.

3. The evidence is conflicting and the verdict is conclusive.

McCulloch, C. J. Plaintiff, Arthur McLaughlin, instituted this action in the circuit court of Columbia County to recover damages by reason of personal injuries received while he was riding on a gravel train op-

erated by defendant.   Plaintiff was an employee of defendant, but had nothing to do with the operation of the train.   He was a member of a bridge gang, and while working at Onalaska, a station about ten or twelve miles north of Camden, he obtained permission from the engineer of a gravel train to ride down to Camden for the purpose of obtaining some of his wearing apparel which he had previously sent to Camden to be laundered. When the train arrived at Camden, plaintiff left it and went over to the laundry to get his clothes and when he returned to the station the gravel train was still there, and he obtained permission from two of the brakemen to ride down to a water tank near the station of Milner, which is south of Stephens.   He rode on the train to Stephens, where another stop was made, and he left the train and went off to the town to get something to eat, and after purchasing some fruit came back and divided it with the trainmen, and again took his place on the train for the purpose of riding down to the water tank near Milner.   The train was on a siding at Stephens, and instead of proceeding on south, as plaintiff says he expected, it backed up about a mile north of Stephens and the unloading of the gravel was begun.   Plaintiff was sitting on the plow used in discharging the gravel from the cars, and when the plow was put in motion he was thrown off, his foot slipped and his leg was caught between a wing of the plow and the side of the car, and was broken.   He was thrown to the ground, falling on the end of the crossties.   This is plaintiff's version of the occurrence.

The allegation with respect to negligence of the defendant is that the trainmen, charged with the duty of unloading the gravel, caused the plow to be moved, with knowledge that plaintiff occupied a place of danger on the plow and failed to warn him of the movement.

The contention of defendant in the trial below was that plaintiff was not rightfully on the train, and that he was grossly intoxicated and was asleep on the gravel

when the plow passed along and threw him off. That particular train had been engaged in hauling gravel from the gravel bed near Bearden to points on the road in the State of Texas, but a day or two before plaintiff was injured the train ceased to make the trips to Texas and was unloading gravel along the track near Stephens. Plaintiff testified that he knew that the train had been engaged in hauling gravel to Texas and was unaware that any change had been made in the work of the train.

There were twenty-five carloads of gravel in the train, the gravel being loaded on flat cars, and the plow used in unloading was on a flat car next to the tender of the engine. The plow was about fifteen feet long and weighed eight or ten tons. The witnesses described it as being in the shape of a "V," with wings which extended out nearly to the sides of the car. On the rear car of the train was a machine called the Ledgerwood machine which carried the wire cable used in dragging the plow over the cars. The doors to the cars were hinged, and as the plow passed along the pressure expelled the loads of gravel. When ready to unload, the cable was stretched alongside the train and lifted to the top of the gravel cars by the train crew and attached to the plow. The other end was attached to the engine, which was taken to the rear of the train, and the plow was pulled through the train by the power of the locomotive.

Plaintiff testified that when he applied to the engineer for permission to ride on the train, the engineer told him that he could not ride on the engine, but that he could go back and ride on one of the cars, and that he got on a flat car next to the tender which carried the plow because it had been raining and the gravel was very muddy. He testified that he rode on the plow because that was the only available place for him where he could keep himself free from the mud; that when he returned to the train at Camden he again took his position on the plow, and also that when he came back from

his trip to purchase food at Stephens he took a position on about the center of the plow. He testified that one of the brakemen and the conductor saw him get back on the train at Stephens, and the jury were warranted in finding from his testimony that those two members of the crew were aware of his position on the plow. Plaintiff did not, according to his own statement, know that the members of the crew were ready to unload the gravel; it was then about nightfall and his first warning was when the plow began to move. The cable was unloaded while the train was on the siding at Stephens and it was lifted to the top of the cars and attached to the plow by the section gang at work there, but plaintiff testified that he did not notice the cable, and the testimony warrants the inference that this was done during his absence on his trip to buy food. The engine was moved from the front to the rear end of the train to pull the string of cars back up to the place where they were to be unloaded, but plaintiff stated that he did not know that the engine was taken back there for that purpose or that the train was being backed up for the purpose of being unloaded. The assistant roadmaster was on the train, and the unloading was done under his supervision and that of the conductor of the train. They gave the signals for the movement of the plow and walked along a few feet behind the plow as it passed through the cars, one carrying a red lantern and the other a white lantern as signals, the conductor signaling the engineer, when necessary, and the assistant roadmaster giving signals to the operator of the Ledgerwood machine. The conductor and the assistant roadmaster were both introduced as witnesses, and testified that they walked behind the plow at a distance of five or six feet, and that plaintiff was not sitting on the plow, but that he was struck by the plow after it had passed through twenty of the cars. It was shown by the testimony that it was dangerous to ride on the plow while it was being moved, and that the witnesses could have seen the plaintiff if he had been sitting on the

plow. There is a direct conflict in their testimony and that of plaintiff himself, who stated that he was sitting on top of the plow when it was put in motion, and that he was carried only a very short distance before his foot slipped in an effort to get down from the plow and that his leg was caught between the plow and the side of the car. The testimony of both the assistant roadmaster and the conductor tends to support the defendant's theory that plaintiff was intoxicated and was lying asleep on a pile of gravel on one of the cars when the plow struck him and "plowed him off," as the witnesses express it. Plaintiff denies, however, that he was intoxicated, although he admits that he had whiskey in his possession, and that he gave drinks to the brakemen.

The principal contention is that the evidence is insufficient to justify a recovery, but we are of the opinion that, viewing the testimony in its light most favorable to plaintiff, it is sufficient to make out a case of negligence on the part of defendant.

Plaintiff was, according to the undisputed evidence, riding on the train without lawful right to do so, and the servants of the company owed him no duty, save the exercise of ordinary care to avoid injuring him after discovering his perilous situation. *St. L., I. M. & S. Ry. Co.* v. *Reed*, 76 Ark. 106; *Adams* v. *St. L., I. M. & S. Ry. Co.*, 83 Ark. 300; *Kruse* v. *St. L., I. M. & S. Ry. Co.*, 97 Ark. 137.

The evidence makes out a case of negligence after discovery of the danger, and the court submitted the case to the jury on that issue. Plaintiff's testimony is sufficient to show that his position on the train was one of peril when the movement of the plow was begun, and that the trainmen were aware of his perilous situation, and put the plow in motion without giving him any warning or opportunity to escape from the danger. The testimony of the witnesses introduced by defendant shows that the position of a man on the plow when it is in motion would be a very dangerous one, and that they could

have seen plaintiff while they were operating the plow if he had been seated on it.  Plaintiff testified that he was, in fact, sitting on the plow, and the jury could have found, and we must assume from the verdict that they did find, that plaintiff was sitting on the plow, and that the assistant roadmaster and the conductor of the train saw him there when they set the plow in motion.  It may be, and it is conceded that plaintiff had no right to ride on the train, and that he was guilty of contributory negligence in seating himself on the plow, yet under the law, if the servants of the company saw him there and put the plow in motion with full knowledge of his perilous situation, the company is liable to plaintiff for damages.  The testimony in the case is sharply conflicting, but the trial jury has accepted plaintiff's statement of the facts as true, and it is not within our province to disregard the finding of the jury based upon legally sufficient evidence.

The only other assignment of error presented here is as to one of the instructions given by the court, at the request of plaintiff, in which it is claimed the court, by the language used, assumed that plaintiff's position while seated on the plow was a perilous one.  We do not think that the language used can be treated necessarily as an assumption of that fact, but it is to some extent ambiguous, and if defendant conceived it to be an assumption of fact by the court, attention to it ought to have been called by specific objection.  A general objection to the instruction was not sufficient to point out this defect.  *Brinkley Car Works & Manufacturing Co.* v. *Cooper,* 75 Ark. 325.

Moreover, the uncontradicted evidence shows that it was dangerous for a person to sit on the plow while it was in motion. In other words, the evidence shows beyond dispute that the situation of plaintiff on the plow when it was about to be put in motion was a perilous one, and

it would not have been error for the court to assume that fact in its instruction.

We find no error in the record, and the judgment is affirmed.