St. Louis-San Francisco Railway Company v. Murphy.

Opinion delivered March 23, 1925.

1. DAMAGES—PHYSICAL EXAMINATION—DISCRETION OF COURT.—Where plaintiff suing the railroad company for personal injuries had submitted to a personal examination by two railroad doctors, it was not an abuse of discretion to deny defendant's request during the trial for further examination by other doctors, including an x-ray of plaintiff's spine, such request

not being timely, and the x-ray not calculated to disprove the prediction of one of plaintiff's physicians that tuberculosis would probably develop from the injury to defendant's spine.

2. TRIAL—ASSUMPTION OF FACT.—An instruction authorizing the jury in a personal injury action to assess damages for future pain and suffering if any *held* not objectionable in form as assuming that he would continue to endure pain in the future.

3. TRIAL—INSUFFICIENCY OF GENERAL OBJECTION TO INSTRUCTION.— Objection to an instruction that it assumed that plaintiff's mental suffering would continue in the future should be specific.

4. DAMAGES—PERSONAL INJURIES—AMOUNT.—A verdict of $12,000 awarded to an experienced brakeman, earning $1,500 annually and in line of promotion, for injuries which incapacitated him to work, necessitating the amputation of three toes and permanent injuries to his spine, with probability of developing tuberculosis, *held* not excessive.

Appeal from Crawford Circuit Court; *James Cochran*, Judge; affirmed.

*W. F. Evans* and *Warner, Hardin & Warner,* for appellant.

*Pace & Davis,* for appellee.

SMITH, J. Appellee was employed by the appellant railroad company as a brakeman on a freight train, and, while climbing to the top of a car, a grab-iron or a step on the side of the car pulled loose, and he fell to the ground, and one of his feet fell under the wheels of the car, which was in motion, and his foot was crushed, and it became necessary to amputate his great toe and two adjoining toes.

In the complaint which appellee filed in his suit to recover damages to compensate the injury he had sustained as a result of his fall, he alleged that he was injured as follows: "Left foot mashed and crushed, necessitating the amputation of three of his toes, leaving his foot stiff and immobile, the tendons and ligaments thereon torn and ruptured, leaving the foot in a useless condition; injury to the spine, spinal column, and the nerves attached thereto, shocking his nervous system, leaving the plaintiff wholly incapacitated to do or perform manual labor of any kind."

At the trial, when appellee was called as a witness in his own behalf, he removed his shoes and socks from both feet, so that the jury might compare them and examine the injury. He claimed that, as a result of his injury, he had become practically club-footed by being required to walk on the side of his foot, and he exhibited the calloused condition which had developed on his foot as a result of this necessity.

Appellee was injured on March 4, 1923, and was carried the next day to the company's hospital, where he remained for thirteen or fourteen weeks, and was released in July, but he returned to the hospital for further treatment, and was finally discharged in August. He testified that his foot was still sore and pained him, and that he could not walk fast, and that his foot turned when he stepped on a rough surface. He also testified that his back was injured and continued to hurt him, and that he had become very nervous.

After appellee and two physicians who were called as witnesses in his behalf had testified, the appellant company asked that two surgeons representing it be allowed to examine appellee, and this permission was given, and appellee was examined by both surgeons, who were members of the hospital staff where appellee had been a patient.

The first physician who testified in behalf of appellee was Dr. Pettus, of Little Rock, and he testified that there was a loss of sensation over a small area inside the foot. That the big toe had been amputated close to where it joined the foot and two adjoining toes about midway of the last two joints, and that the tendons which control the foot and are attached to the big toe had been so injured that appellee walked on the side of his foot, and that, as a surgeon, he would advise amputation of the foot. Dr. Pettus also testified that appellee's spine had been injured, and that the reflexes were exaggerated, and that appellee suffered pain and would continue to do so until the cause was found and removed, and that pressure on appellee's back caused excruciating pain, and

would accelerate the pulse from a normal beat to 120 in about a minute's time; that this was a condition over which appellee had no control; and Dr. Pettus expressed the opinion that appellee's injury was permanent, and would grow worse.

Dr. Parchman, of Van Buren, was also called as an expert witness on behalf of appellee, and he too described appellee's injuries, and concurred in the opinion expressed by Dr. Pettus that appellee's condition would grow worse. In describing appellee's injuries Dr. Parchman said: "I think the man has an injured spinal column. Necrosed bone, or has become infected with tubercular bacilli."

After making this answer, the presiding judge said: "Please answer that question again. I did not just catch your answer." And the witness replied: "I said that 85 per cent. of the injuries to the spinal column result in tuberculosis, which I think is likely to occur to this man by reason of this injury."

This question and answer were objected to on the ground that there was "no allegation in the complaint that there was any such injury to his spinal column."

As has been said, appellee was examined by two surgeons who had treated him in the hospital. Appellee made no point that this testimony was privileged, and these surgeons gave a history of appellee's treatment in the hospital. They had made an X-ray picture of appellee's foot, and introduced this picture in evidence. They also testified that appellee made no complaint of injury to his back while in the hospital, and had received no treatment on that account. That they had examined his back, and could find no indication of an injured back except appellee's statement that it caused him pain, and that their examination of appellee indicated that his back was normal. After testifying that all the tests made by them indicated that appellee's back was normal and was uninjured, and that they found no indication of tubercular trouble, they testified that an X-ray is the

final test, but that they had taken no X-ray because they did not have an opportunity to do so.

Before the case was closed the company called two other physicians from Fort Smith, neither of whom had ever examined appellee. Permission was asked that these physicians from Fort Smith be allowed to examine appellee, and to have X-rays made. These physicians testified that it was no test for determining the existence of a tubercular condition of the spinal column to press on a person's back to see whether that quickened his pulse.

The trial was not concluded on the day it was begun, and, after the attendance of the Fort Smith physicians had been secured, counsel for the company stated that he would like to have appellee pull off his shoes and exhibit his foot in the presence of these doctors. Objection was made to this request on the ground that appellee had already been examined by two doctors for the company, and, in overruling this request, the presiding judge said: "I am not going to permit any further examination of this man." Counsel for the company said: "We also ask that an X-ray picture be made of his back." In overruling this request the court said: "If you had asked permission in time, I might have granted it, but I am not going to delay this case any longer." An exception was saved to the ruling and to the remark of the court.

We think no reversible error was committed in the ruling set out above. The complaint alleged that appellee's back was injured, and this was notice that damages would be asked on that account. The court directed that appellee submit to an examination at the hands of two doctors representing the company, and this examination was made, and these doctors testified that they made no X-ray examination because they had no opportunity to do so, but the request to make this last examination was not embraced in the request for permission to examine appellee.

It was not shown when or where this X-ray examination could be made, and it does not appear what delay would have been entailed in the trial on that account. The remark of the court indicates there would have been some delay, and the matter was within the discretion of the court, and we think no abuse of that discretion was shown. Besides, we think, under Dr. Parchman's testimony, read in its entirety, that it does not appear that he stated that appellee then had tuberculosis of the spine —a condition which the company's physician said would be disclosed by an X-ray—but the prognosis of the case was that tuberculosis would develop, an opinion which an X-ray picture could neither refute nor confirm.

Over appellant's objection the court gave an instruction numbered 5, which reads as follows: "If the jury find for the plaintiff, they will assess his damages at such a sum as will compensate him for the bodily injury sustained, if any, the physical pain and mental anguish suffered and endured by him in the past, if any, and that which he will endure in the future, by reason of the said injury, the effect of the injury on his health according to the degree and probable duration of the same, if any, his loss of time, if any, the pecuniary loss from his diminished capacity for earning money through life, if any, and from these, as proved by the evidence, assess such damages as will compensate him for the injuries received."

Only a general objection was made to this instruction, and the objection now urged to it is that it assumed as a fact that appellee would endure future physical pain and mental anguish by reason of the injuries received by him. We think the objection is one which should have been made specifically at the trial. We do not think the instruction assumes as a fact that appellee will continue to endure pain and anguish. On the contrary, we think the question was submitted hypothetically—as it should have been—and, if it was thought otherwise, a specific objection should have been made. St. L. S. W. R.

Co. v. McLaughlin, 129 Ark. 377; Brinkley Car Works & Mfg. Co. v. Cooper, 75 Ark. 325.

The verdict and judgment in the case was for $12,000, and it is insisted that this is excessive, and unsupported by the testimony. It appears from the facts already stated that appellee's condition was that of a man who had lost the use of a foot, and, as one doctor said, it would have been better to have amputated the foot. In addition, appellee was shown to have had a permanent injury to his spine, with the probability that the trouble would develop into tuberculosis, and that his condition was permanent. In addition it was shown that appellee was a trained and experienced brakeman, and in line soon to be promoted to a conductor. That his earnings as a brakeman were about $1,500 a year, and he had wholly lost his capacity to earn money in that employment, and could only secure such employment as a cripple could perform. Under these circumstances we cannot say the verdict is not supported by the testimony, and, as no error appears, the judgment is affirmed.