Missouri Pacific Railroad Company *v.* Paty.

Opinion delivered July 13, 1931.

R. E. *Wiley* and *Henry Donham*, for appellant.
J. H. *Lookadoo*, for appellee.

BUTLER, J. This suit was brought by the appellee as administrator of the estate of J. W. Moss, deceased, for the benefit of his mother as next of kin and of his estate, for damages sustained because of his death, which occurred in a collision between a freight train on which he was riding and a switch engine in the Kenova yards of the appellant company in the town of Smackover. It was alleged that at the time of the collision plaintiff's intestate was riding on a flat car just in front of a load of poles where an employee of the appellant had directed him to ride, and where he was riding with the knowledge and consent of such employee; that the cause of his death was due to the gross negligence of the employee of appellant in running the freight train into a switch engine, such negligence consisting of the careless operation of the freight train and "in not knowing that the switch engine was just ahead," in not having the train under control in the yards, and in not stopping the train before it ran into the switch engine.

The appellant answered denying all the material allegations of the complaint, including the allegation that the deceased was riding upon the freight train with the knowledge and consent of the servant of the appellant, and alleged that he was a trespasser on said train and was negligent in riding thereon. On a trial of the case there was a verdict and judgment for the appellee, from which is this appeal.

At the close of the testimony in the case the defendant requested the court to instruct as follows: "Instruction No. 1. You are instructed to return a verdict for the defendant." The court refused this instruction over the objection and exception of the defendant, which objection and exception were preserved in the motion for a new trial and which are here urged as the principal ground for a reversal of the case.

It is also assigned as error and here argued that the court erred in giving a number of instructions for the plaintiff over the objections and exceptions of defendant

and in refusing to give an instruction requested by the defendant.

Our conclusion on the first assignment of error makes it unnecessary to consider the others. We are of the opinion that the court should have instructed the jury to return a verdict for the defendant as requested by it. The evidence is in conflict as to whether or not the deceased was known to be riding upon the freight train by the servants of the appellant operating the train. Each member of the train crew testified that it was against the rules of the company to allow any one to ride upon the freight car and that the deceased had boarded the train and was riding thereon without their knowledge and consent. But, in view of the verdict of the jury, we must consider the evidence adduced on behalf of the appellee in its most favorable light and give it its strongest weight in favor of the appellee. When thus considered, it tends to show that the deceased was invited by one of the train crew to ride upon the train and to occupy the flat car where he was at the time of the collision, and that the servant with whose knowledge and consent he was riding was either the fireman or the engineer on the locomotive of appellant. It is admitted by the appellee that the deceased was but a licensee, and that the only duty devolving upon the servants of the appellant was not to be wilfully or wantonly negligent of his safety and only to exercise ordinary care to avoid injuring him after becoming aware of his peril.

We agree with the appellee that this is the true rule and that it is so held in a long line of our decisions, among which is the case of *St. L. S. W. Ry. Co.* v. *McLaughlin*, 129 Ark. 377, 196 S. W. 460, cited by appellee; *St. L. I. M. & S. R. Co.* v. *Reed*, 76 Ark. 106, 88 S. W. 836; *Kruse* v. *St. L. I. M. & S. R. Co.*, 97 Ark. 137, 133 S. W. 841; *Williams* v. *C. R. I. & P. Ry. Co.*, 139 Ark. 562, 215 S. W. 605; *Ark. & La. Ry. Co.* v. *Sain*, 90 Ark. 278, 119 S. W. 659; *Prescott & N. W. Ry. Co.* v. *Hopkins*, 122 Ark. 168, 182 S. W. 551; *Webb* v. *K. C. S. R. Co.*, 137 Ark. 107,

208 S. W. 301; *St. L. S. F. R. Co.* v. *Bley,* 168 Ark. 814, 271 S. W. 455.

The deceased was a young man of about twenty years of age who appears to have been of average intelligence, and when he elected to ride on the flat car seated in front of a load of poles he assumed the perils incident to the situation, and there was no affirmative duty on the part of the servants of appellant to warn him of the dangers which might ordinarily ensue.

The evidence is undisputed that the freight train was a light one, described by the operatives as "half a train," traveling at approximately twenty-five miles per hour before it reached the confines of the yards; that, as it approached and passed the block signal at the yard boundary, it showed a green light which indicated that the way ahead was clear. The speed of the train had been slackened as it passed the signal to about fifteen miles an hour, and this was the rate of its progress through the yards, which was the customary speed for trains of that weight. The engineer and fireman were keeping a lookout ahead, but, as they traveled along the yards, the engineer's view of the track was obscured because of a sharp left-hand curve in the track. Therefore, the engineer could not see the track ahead, but the fireman testified that he maintained a lookout and when at about 1,100 feet away he saw the switch engine and thought when he first observed it that it was on a siding, but when they had gone perhaps 400 feet further he discovered that the switch engine was not on the siding but on the main line on which the freight train was approaching. Upon this discovery the fireman immediately notified the engineer of that fact, who at once applied the emergency brakes in an effort to stop the train and prevent a collision. On account of the rate of speed the train could not be stopped in time to keep from hitting the switch engine, and the locomotive did strike the same with sufficient force to break the pilot of the engine and knock off its headlight and to damage some of the box cars of the train and to cause the poles on the flat car on which the deceased was

riding to slide forward upon him, injuring him so that he died within a few minutes. Just preceding the time of impact and after the emergency brakes had been applied, the engineer stepped from the cab to the platform on the right, and the fireman to the platform on the left. While the shock was considerable, it was not enough to jar either of them from the platform or to injure any of the brakemen who were in the caboose or on the train. A short time after this occurrence and while it was being investigated by the railway authorities and the Interstate Commerce Commission, a test was conducted with the situation reconstructed as near as could be to that of the date and time of the collision in question for the purpose of ascertaining how quickly a train under proper control could be stopped. The one who conducted the test brought his train to a stop within a shorter distance than did the engineer at the time of the collision—approximately sixty feet from where the collision occurred. The engineer was laid off because of the collision for several months before being put back to work. These facts, perhaps, would be sufficient evidence of the improper movement of the train or want of an adequate lookout to support a finding of negligence in the operation of the train, but would not be sufficient to establish the liability of the appellant, for there is no testimony to the effect that there was any element of wilfulness or wantonness on the part of the employees of the appellant in these matters, and, as the deceased was a mere licensee, his administrator, the appellee, is in no position to complain, for these were, at most, mere acts of negligence. The duty to the deceased must be estimated from the moment when the fireman first became aware of the engine on the track ahead, for it is only from that time that the operatives of the locomotive knew of any unusual and impending peril to themselves or any one on the train, including the deceased. Before that time there was no duty resting upon the employees with respect to the deceased except not to wilfully or wantonly injure

him, but from this time there arose the duty when the obstruction ahead was discovered and the peril apparent, to use ordinary care to avoid the collision and prevent the injuries which might result therefrom to those upon the train. From the time of the discovery of the switch engine on the track the conduct of the fireman and engineer must have been moved by the instinct of self-preservation, and as reasonable men it was to be expected that they would do all in their power to prevent the collision and avoid injury. This the uncontradicted testimony shows they did. There is nothing in the evidence to indicate that there was any act possible for the engineer to perform other than he did that could have averted the collision when he was notified by the fireman of the danger, nor anything to dispute the testimony of the fireman that he gave the warning when he first became aware of the obstruction on the track. Therefore, since there was no negligence shown after the engineer and fireman became aware of the obstruction ahead which might cause a collision and imperil the safety of the deceased, but on the contrary the undisputed evidence showed that they exercised ordinary care to avoid the collision, under the rules above announced and supported by the authorities, *supra,* we hold that there was no liability shown.

The judgment of the trial court is therefore reversed, and, as the facts appear to have been fully developed, the case is dismissed.