## KRUSE v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY.

### Opinion delivered January 2, 1911.

1. CARRIERS—RIGHTS OF PERSONS ON FREIGHT TRAINS.—When one enters a train, such as a through freight, which he knows or has reason to believe is not intended to carry passengers, and on which the rules of the company forbid passengers to ride, he is not a passenger in a legal sense, but is a trespasser, and cannot recover damages for injuries received while on the train unless they have been wilfully or wantonly inflicted by servants of the railway company. (Page 139.)

2. SAME—RIGHTS OF PERSONS RIDING FREE.—When a person enters a train without any intention to pay fare, but under a collusive agreement with the conductor to ride free, or for less than full fare, in violation of the rules of the railway company, he does not legally become a passenger, but is a trespasser, and the company is not responsible for his safety as a passenger. (Page 140.)

3. SAME—RIGHTS OF PERSONS ON FREIGHT TRAINS.—There is no presumption that a person entering a freight train by permission of the conductor is not legally a passenger. (Page 141.)

4. SAME—INSTRUCTION—SPECIFIC OBJECTION.—An instruction that *"the presumption is that a person found upon a freight train is not legally a passenger,* and if he claims that he is it devolves upon him to show a state of case that will rebut the presumption," and "that he must show that he entered the train with the *bona fide* intention of becoming a passenger," was erroneous as to the alleged presumption, but such error should have been objected to specifically. (Page 141.)

5. TRIAL—EFFECT OF JUDGE'S ABSENCE.—Appellant cannot complain because the trial judge absented himself from the court room during the argument of his counsel unless his adversary took advantage of such absence to commit some act which operated to appellant's prejudice. (Page 142.)

Appeal from Faulkner Circuit Court; *Eugene Lankford*, Judge; affirmed.

*J. A. Watkins* and *T. G. Malloy*, for appellant.

Where one who is able and willing to pay his fare takes passage on a freight train not intended for carriage of passengers by direction and permission of the company's agent and conductor, he cannot be regarded as a trespasser, even though he has not paid the fare. 5 Am. & Eng. Enc. of L. 514, note 1; 83 Ala. 238; 3 Am. St. Rep. 715; 99 Mo. 263; 92 Mo. 208; 1 Am. St. Rep. 760; 31 Am. & Eng. Ry. Cases 1; 9 Utah 340. And such person is entitled to the privileges and protection of a passenger. 38 La. Ann. 111. There is no presumption in this State that a person found on a freight train is not legally there or that he is a trespasser; the law is to the contrary. Kirby's Digest, § 6705. Plaintiff had the right to presume that the train was a local freight, even if it had not been one. 63 Ark. 491. Notwithstanding any rules of the company, when its agent, whose duty it was to inform passengers what trains to take, directed plaintiff to take passage upon this train, he became on entrance therein a passenger. 92 Mo. 208; 1 Am. St. Rep. 760; 31 Am. & Eng. Ry. Cases 1; 6 L. R. A. 409; White on Personal Injuries on Railroads, § 555, and cases cited; 49 Ark. 360; 4 Am. & Eng. Ry. Cases 589; 72 Mo. 62; 58 Am. Rep. (La.) 162; 5 Am. St. Rep. 510. The trial was rendered a nullity by the action of the presiding judge in absenting himself from the court room without suspending the trial. 71 Ark. 112; 6 Col. 574; 39 Ind. 369; 14 Gratt. (Va.) 447; 95 Wis. 558.

*Lovick P. Miles* and *Thos. B. Pryor*, for appellee.

The evidence is clear that appellant knew that it was a violation of the company's rules for the conductor to carry him on this train, and also that it was understood that he was to be carried without the payment of any fare. He was a trespasser. "When there is a division of freight and passenger business of a railroad, the presumption is that a person found on a freight train is not legally a passenger; and if he claims that he is, it devolves upon him to show a state of case that will rebut the presumption. 76 Ark. 106; 49 Ark. 360; 114

Fed. 123; 57 N. Y. 382; 59 Ark. 403. Appellant cannot complain because of the absence of the presiding judge, since he raised no objection thereto at the time, and voluntarily continued his argument. 71 Ark. 112; 52 Ark. 285; 88 Ark. 70; 52 Ark. 6; 56 Ark. 515.

McCULLOCH, C. J. Plaintiff, C. H. Kruse, instituted this action in the circuit court of Faulkner County to recover damages for personal injuries received while riding on one of appellee's freight trains which he had boarded at Malvern, Ark., *en route* to Texarkana. His injuries were caused by a collision with another train at Witherspoon, Ark. He alleged that he was a passenger on the train, and had paid his fare to Texarkana. The answer denied that plaintiff was a passenger, alleged that the train was one on which passengers were not allowed, and that plaintiff was a trespasser on the train, and had not paid his fare. The jury returned a verdict in favor of defendant, and plaintiff appealed.

Plaintiff was a telegraph operator, and had been sojourning in Hot Springs. He came to Malvern over another railroad, and desired to go to Texarkana on one of defendant's trains. He testified that he was waiting in the station at Malvern when the freight train came, and asked the conductor if the train carried passengers, and was told that it did; that he inquired of the conductor what the fare was to Texarkana, and was told that it was two dollars; that he paid that sum to the conductor, who pointed out the caboose and told him to get on.

The testimony adduced by defendant tended to show that the train was a through freight, on which passengers were not allowed to travel without special permission of the trainmaster or superintendent, and that plaintiff knew this when he boarded the train; that plaintiff neither paid nor offered to pay fare, nor intended to pay any, but that, on the contrary, he was permitted by the conductor to ride free in violation of the rules of the company. Plaintiff introduced one witness whose testimony tended to show that the train on which plaintiff rode was a local freight and carried passengers, but the preponderance of the evidence was to the effect that it was a through freight and did not carry passengers.

The law is well settled in this State that when one enters

a train such as a through freight, which he knows or has reason to believe is not intended to carry passengers, and on which the rules of the company forbid passengers to ride, he is not a passenger in a legal sense, but is a trespasser, and cannot recover damages for injuries received while on the train unless they have been wilfully or wantonly inflicted by servants of the railway company. *St. Louis, I. M. & S. Ry. Co.* v. *Reed,* 76 Ark. 106.

Chief Justice COCKRILL, speaking for this court in such a case, said: "Where there is a division of the freight and passenger business of a railroad, the common presumption is that a person found on a freight train is not legally a passenger; and if he claims that he is, it devolves upon him to show a state of case that will rebut the presumption." *Hobbs* v. *Texas & Pac. Ry. Co.,* 49 Ark. 357.

The same learned judge, speaking for the court in another such case, said that if a person "through his own neglect had embarked on a mere wild train which the conductor could not delay without the danger of throwing the passenger and freight travel of the road into confusion, it was his duty to refuse to stop merely for a passenger's accommodation. The fact that he took the appellee's ticket could not alter the rule under such circumstances." *St. Louis, I. M. & S. Ry. Co.* v. *Rosenberry,* 45 Ark. 256.

We deem it to be equally sound in justice to say that when a person enters a train without any intention to pay fare, but under a collusive agreement with the conductor to ride free in violation of the rules of the company, and does not pay any fare, he does not legally become a passenger, and the railway company is not responsible for his safety as a passenger. Quoting from the language of Judge RIDDICK in the Reed case, *supra,* if, under those circumstances, he "is carried safely to his destination, he gains that much at the expense of the company. On the other hand, if an accident happens, and he is injured, there is no reason or justice in requiring the company to pay for his injuries, unless they have been wantonly or wilfully inflicted."

The authorities which sustain the proposition are numerous, and among them are found the following, which include

cases where persons ride under collusive agreements with the conductor not to pay fare, or to pay less than full fare, and also where persons ride on a pass or ticket procured from the company by fraud. *Fitzmaurice* v. *N. Y. etc., Rd. Co.,* 192 Mass. 159, 7 Am. & Eng. Ann. Cas. 586; note to *Vassar* v. *Atl. Coast Line R. Co.,* 9 Am. & Eng. Ann. Cas. 535; 2 Shearman & Redf. on Neg., § 489; 2 Jaggard on Torts, § 1081; *Toledo, etc., Ry. Co.* v. *Beggs,* 85 Ill. 80; *Purple* v. *R. Co.,* 114 Fed 123; *Duff* v. *Ry. Co.,* 91 Pa. St. 458; *Mendenhall* v. *Ry. Co.,* 66 Kan. 438; *Way* v. *Chicago, R. I. & P. Ry. Co.,* 64 Ia. 48; *Condran* v. *Ry. Co.,* 67 Fed. 522; *Williams* v. *M. & O. Ry. Co.,* 19 So. 90.

We have no question presented here of the status of a person who attempts in good faith to ride on a ticket or pass on which he is in fact not entitled to ride, but is permitted to ride by the conductor. Many cases hold that under those circumstances he is deemed to be a passenger and entitled to protection as such, the test being the question of good faith. But where a person attempts in bad faith to defraud the company by riding free or for less than full fare, even with the consent of the conductor of the train, according to sound reason and authority he is a trespasser, and the company is not responsible for injuries not wantonly or wilfully inflicted.

The instructions given by the court on this subject conform to the law as here expressed, and were therefore correct.

The court gave the following instruction over the objection of the plaintiff: "The court instructs you that the presumption is that a person found upon a freight train is not legally a passenger, and if he claims that he is it devolves upon him to show a state of case that will rebut the presumption. He must show that he entered the train with the *bona fide* intention of becoming a passenger thereon; that is, that he either procured a ticket of defendant to ride upon said train, or that he intended in good faith to pay his fare."

The first part of this instruction is erroneous in saying that "the presumption is that a person upon a freight train is not legally a passenger." The language employed is almost identical with that of Chief Justice COCKRILL in *Hobbs* v. *Texas & Pac. Ry. Co., supra;* but when that opinion was written we had no statute, such as was afterwards enacted, requir-

ing railroads to carry passengers on local freight trains. Since
there is a statute compelling railroads to carry passengers on
local freight trains, when a person is permitted to enter a
freight train as a passenger, there is no presumption arising
that he is not legally a passenger. *Ark. Midland Ry. Co. v.
Griffith,* 63 Ark. 491.

We conclude, however, that the last sentence of the in-
struction rendered the error in the first harmless, for it cor-
rectly stated the law as to what the plaintiff was required to
prove in order to show that he was a passenger. It devolved
on him to prove that much, even if it had been a regular pas-
senger train, where the pleadings raised the issue as to his
being a passenger. And, while this burden was on him, as
correctly stated in the instruction, yet there was no presump-
tion that he was not a passenger merely because he was on
a freight train. It was not a matter of presumption at all as
to whether or not he was a passenger, but it was a matter of
proof. However, the use of the objectionable term was a
matter which should have been called to the attention of the
court by a specific objection.

It appears from the bill of exceptions that while one of
plaintiff's counsel was making the closing argument to the
jury the presiding judge, without suspending the proceedings,
left the court room and went to a closet several hundred feet
distant, where he remained out of the hearing of the jury for
several minutes—probably five or ten minutes. During the ab-
sence of the judge, a member of the bar not interested in this
trial sat upon the bench upon the invitation of the judge. The
counsel continued his argument, and while so doing defendant's
counsel objected to him reading from a deposition of one of
defendant's witnesses. Counsel then suspended his argument
until the return of the judge, who, on his return, permitted
counsel to read from the deposition. It also appears from the
affidavits of bystanders that when defendant's counsel inter-
posed the objection to the reading of the deposition there was
a heated controversy between counsel, but it is not shown what
was said.

It is insisted that the conduct of the trial judge in ab-
senting himself from the court room calls for a reversal of the

case.  In *Stokes* v. *State,* 71 Ark. 112, it was held to be error for the judge in the trial of a murder case to leave the court room without suspending the trial.  No objections seem to have been interposed in that case to the departure of the judge.  But there is this difference between the facts of that case and this, aside from the difference in the character of the cases:  There the counsel for the State was making his argument to the jury, and commented on the failure of the defendant to testify, which constituted actual prejudice; whilst in the present case it was plaintiff's counsel who was arguing the case, and he elected to continue the argument in the absence of the judge.  Now, without meaning to weaken the force of the wholesome rule laid down in the Stokes case, we say that a party to a civil case who voluntarily continues the proceedings after the judge has absented himself from the court room can not complain merely on account of the absence of the judge.  He must show that some misconduct of his adversary actually occurred during the absence of the judge which operated to his prejudice.  During the absence of the trial judge there is really no legal trial in progress, and neither party is compelled to proceed; but if one of the parties does so, he can not complain unless his adversary takes advantage of the absence of the judge to commit some act in the presence of the jury which operates to his prejudice.

We do not discover any prejudicial error in the trial of this case.  It was tried upon conflicting testimony, and upon instructions which fairly submitted the questions of fact to the jury, and the verdict settled the issues against the plaintiff.

The judgment is therefore affirmed.

KIRBY, J., (dissenting).  The plaintiff testified that he was told by the ticket agent at Malvern, Ark., upon inquiry, that there would be a freight train along shortly upon which he could go to Texarkana, Arkansas; that when it came he boarded it and paid the conductor $2, the fare for passengers for that distance.  Over his objection the court gave the following instruction:  "The court instructs you that the presumption is that a person found upon a freight train is not legally a passenger, and if he claims that he is it devolves upon him to show a state of case that will rebut the presumption.  He must show

that he entered the train with the *bona fide* intention of becoming a passenger thereon; that is, that he either procured a ticket of defendant to ride upon said train, or that he intended in good faith to pay his fare."

Sec. 6705, Kirby's Digest, provides: "Local freight trains on all railroads or railways in this State shall carry passengers from and to any and all of their stations." This court, in discussing this statute in *Arkansas Midland Ry. Co.* v. *Griffith*, 63 Ark. 499, said: "Since the State compels the company to carry passengers on one of its two kinds of freight trains, and since these are not easily distinguishable by persons unacquainted with the workings of railroads and trains, it is but just to presume that the persons in charge of these trains are clothed with authority and rest under the duty to designate to such as apply for passage, whether or not a particular train will carry passengers, and that in this the conductor acts for and as agent of the company; for the convenience of the public is the great end in view, and this can not be secured without some method of giving essential information to persons interested. The conductor therefore having permitted plaintiff to board the train, and having received his fare, the plaintiff had a right to presume that the freight was a local freight—one which the law compels to carry passengers."

It will be seen that not only this instruction that "the presumption is that a person found upon a freight train is not legally a passenger, and if he claims that he is it devolves upon him to show a state of case that will rebut the presumption," etc., is not the law, but the conductor having permitted plaintiff to board the train and received his fare, all of which he did according to plaintiff's testimony, raised the presumption in his favor that the train was a local freight and one which the law compels to carry passengers. The court's opinion concedes that this part of said instruction above quoted was erroneous, but decides it was rendered harmless by the last sentence, which, standing alone, was a correct statement of the law. But it has often held that an erroneous instruction is not corrected and rendered harmless by a separate correct one with which it is in conflict. *St. Louis, I. M. & S. Ry. Co.* v.

*Hitt,* 76 Ark. 224; *Grayson-McLeod Lumber Co.* v. *Carter,* 76 Ark. 69; *Bolling* v. *State,* 54 Ark. 602.

It seems singular that a whole right instruction will not render harmless the error of giving a contradictory wrong one; but if it be mixed, " 'arf and 'arf," the first part of the instruction erroneous and the remainder correct, the result is different, and in this court's opinion not prejudicial.   In other words, if the first sentence, which was admittedly erroneous, had been given as a separate instruction from the last sentence, which by itself was correct, the error would have been prejudicial and caused a reversal of the case, but because the true and the false were joined the error was rendered harmless.   Truth blended with error makes a harmless compound, within the authority of the court's opinion.

The court further justifies its opinion by saying the erroneous sentence was not specifically objected to.   But the instruction was objected to as not correct and not the law, and the court says in effect:  "True, it is not the law, but only the first half of it is wrong, and because your objection did not stop at the period separating it from the other sentence it is not sufficient."   Plaintiff was entitled to have his theory of the case fairly submitted to the jury on correct instructions, and when it was not done, as admittedly in this case it was not, he should not on appeal be met here with such technical refinements in objections and exceptions as that because he did not object to certain words, or a phrase, or a certain sentence or paragraph specifically, but only to the incorrect instruction, his only objection is insufficient.

The court erred grievously in departing from the wholesome and salutary rule laid down in *Stokes* v. *State,* 71 Ark. 112, and in effect overruling that case.   There it held that the temporary absence of the judge from the court room during the trial vitiated it and was reversible error without regard to what happened during such absence, saying:  "The facts shown by the above recitals are made one of the grounds of the motion for new trial.   While it appears that the judge had lost control of the proceedings for only a very short time, yet that destroyed the integrity of the trial; for, without the presence of a presiding judge at all times to uphold the majesty

of the law and enforce its mandates, there can be no trial, such as is contemplated by the Constitution and statutes. The Constitution centers the power to preside over the proceedings constituting trials in felony cases in the person of a judge. The proceedings "will not run" without his superintending and controlling power, even for a moment. We do not mean to hold that the judge must hear every word spoken and see everything that is done in the court room, nor that he is required to remain in the same place. This at times might be not only uncomfortable and inconvenient, but impossible. We do hold, however, that his presence where he can at all times direct the proceedings is essential. He must be where, either on his own motion, or at the request of parties litigant, he can at all times during the trial protect and preserve their legal rights.

In Georgia it is held that the mere absence of the judge during the progress of the trial, where no objection is made, and where the absence is only for a few moments, and for a necessary purpose, is not necessarily reversible error. That, to become so, it must appear, not only that objection was made to the failure of the judge to suspend the trial, but that his absence resulted in some harm to the losing party. But in the last case in which this rule is followed the Supreme Court says: "If it were an open question, we would hold that the presence of the judge at all stages of the trial is absolutely necessary to its validity, and that the absence of the judge from the trial without suspending same for any length of time, no matter how short, or for any purpose, however urgent, would vitiate the whole proceeding, whether objection was made by the parties interested or not, and whether injury resulted to any one or not." Continuing, the court says: "The judge is such a necessary part of the court that his absence destroys the existence of the tribunal, and public policy demands that the tribunal authorized to pass upon the life, liberty and property of the citizens shall be constituted during the entire trial in the manner prescribed by law." The court then adds: "The great weight of authority is in harmony with this view," and quotes from several cases, citing many more. *Horne* v. *Rodgers* (Georgia), 49 L. R. A. 176; *Ellerbee* v. *State* (Miss.), 41

L. R. A. 569, note; 17 Am. & Eng. Ency. Law, p. 720, and authorities cited in note.

Further: "As this temporary absence of the judge was of itself reversible error, it is unnecessary, etc." This court adopted the right rule in that case, approving the strong language of the Georgia court, and it is supported by wisdom, sound policy and the great weight of authority. Courts are instituted for the protection of the people in the exercise and enjoyment of their rights and redress of their wrongs, and litigants are entitled to have their causes heard by the court as constituted and in the manner prescribed by law, and this is not possible in the absence of the judge whose duty it is to be present and in control throughout the trial. If it becomes necessary for a judge to absent himself during the trial, as it must and will, then he should suspend proceedings till such time as he can resume the bench and proceed under the forms of law. His absence does suspend the trial under the law and vitiate the whole proceedings without regard to its length, or whether objection was made thereto, or injury resulted to any one because of it, and this court should have so held in conformity with its former correct ruling.

For these errors the cause should have been reversed and remanded for a new trial.

Mr. Justice HART concurs in this opinion.