WILLIAMS *v*. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.

Opinion delivered July 7, 1919.

RAILROADS—INJURY TO TRESPASSER ON FREIGHT TRAIN—DUTY OF EMPLOYEES.—Defendant railway issued orders refusing permission to any one to ride on its through freight trains. Defendant's brakeman, on a through freight, permitted appellant and appellant's intestate and others to ride in a box car, exacting a small sum from each for the permission. Appellant was injured and his intestate killed, when they were sitting in the box car, their legs hanging out of the door, and the train passing through a very narrow bridge. *Held*, as defendant's employees were violating the rules of the company, that they owed the injured parties no duty to warn them of the danger, that the latter assumed all risks, and that defendant railway company was not liable for the injuries.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks*, Judge; affirmed.

*Phil M. Canale* (of Memphis, Tenn.), and *Mehaffy, Reid & Mehaffy* and *T. D. Crawford*, for appellant.

The testimony shows two brakemen came into the furniture car and saw the three boys sitting in a position of extreme danger and unaware of their peril. Defendant's employees are charged with the duty of exercising ordinary care to avoid injuring persons in a place of danger. The testimony made out a *prima facie* case of negligence on their part. One who withholds testimony within his power is subject to the presumption that if in-

troduced it would be unfavorable to him. Note to Ann. Cases 1914 A., p. 917. The exact question has not been decided by this court, but has in a number of other States. 47 N. Y. App. Div. 479; 120 Minn. 31. The failure of a party to produce or account for an important witness whom he could secure may be properly considered by the jury in determining the merits of the case. 39 Ind. App. 333; 32 *Id.* 687; 75 Ga. 282; 200 Fed. 840. Failure of defendant to call as witnesses employees who, as shown by other evidence, may probably have committed an act of negligence resulting in the injury complained of raises a presumption that their testimony if produced would be unfavorable. 81 Fed. 578. See also 4 Rich. Law. 329, 55 Am. Dec. 678; 47 La. An. 1218, 49 Am. St. 400; 163 Mo. App. 304; 28 N. Y. S. 683. In this case defendant failed to produce either one of the three brakemen on the train on which the accident occurred. It is admitted that these brakemen were all present when the case was tried and that their presence was unknown to plaintiffs and the presumption is that their testimony would be unfavorable to defendant. The fact that defendant withheld their testimony would justify the jury in inferring that if present they would have testified that they saw the young men in a position of great peril and failed to warn them of their danger. The court erred in directing a verdict for defendant.

*Thomas S. Buzbee* and *George B. Pugh* for appellee.

1. The plaintiff, Williams, and the intestate of Thweatt, administrator, were wrongfully on the train and in the car and were merely trespassers. 58 Ark. 318; 57 L. R. A. 700; 15 Am. Rep. 513; 24 N. E. 753; 30 Am. Rep. 98; 76 Ark. 106; 18 L. R. A. (N. S.) 763; 37 *Id.* 418 and note.

2. It was not shown that any of the trainmen who knew that these boys were sitting in the door of the car; knew that these boys were sitting in the door of the car, which caused the injury, nor that either of the brakemen had ever been over the road before; on the contrary,

it was shown that brakemen who had experience on other portions of the road or on other railroads were sometimes sent over this division as brakemen on through trains when they had never been over that portion of the road before. Under these circumstances a peremptory instruction for defendant was proper. 129 Ark. 77; 113 *Id.* 353; 18 L. R. A. (N. S.) 763.

3. Previous to our new lookout law there was no obligation on the part of enginemen to discover the peril of a trespasser and the burden was on the plaintiff to show that the peril was actually discovered in time to have prevented the injury. 49 Ark. 257; 101 *Id.* 532; 76 *Id.* 10; 77 *Id.* 401; 83 *Id.* 300; 94 *Id.* 524.

In order to make out a *prima facie* case it was certainly necessary for plaintiffs to show that these two brakemen or at least one of them, knew that there was a bridge just ahead which the feet of these men, sitting as they were, would not clear and we do not believe even that would be sufficient, taken in connection with the other facts proven to make out a *prima facie* case in view of the fact that neither of these brakemen was directing the force or driving the vehicle or by his own act could have stopped the movement which brought the feet of these men into contact with the superstructure of the bridge. If they had been in the car with these men at the very time of the accident and had seen the bridge ahead and had known that the feet of the men would strike the superstructure of the bridge and failed to warn them, they would have been guilty of moral obliquity, but their conduct would have created no liability of the railway company for the resulting injury. The reverse of the rule contended for by appellant is the law of this State. 112 Ark. 446; 102 *Id.* 631.

McCULLOCH, C. J. This appeal is from a judgment of the circuit court of Pulaski County in two consolidated actions instituted against appellee for damages resulting from injuries received by the appellant in one of the cases, and by appellant's intestate in the other

case, while riding on one of appellee's freight trains. Williams, the appellant in one of the cases, was seriously injured, and Graham, appellant's intestate in the other case, received injuries which resulted in his death. The trial court gave a peremptory instruction in favor of appellee, and the only question before us for consideration is whether the testimony was sufficient, viewing it in the light most favorable to the rights of appellants, to warrant a verdict in their favor.

Williams and Graham were young men residing in the State of Tennessee and started on a trip to Oklahoma for the purpose of working in the harvest fields in that State. They attempted to make the trip on the railroad without paying fare, that is to say they undertook to "beat their way" to the journey's end. They, together with others who were bent on the same mission, rode on a freight train from Memphis to Argenta and then walked to Hot Springs junction, which is just outside of the southern limits of the city of Little Rock, where they boarded a through freight train. The rules of the company did not permit passengers on through freight trains, but in violation of the rules, two of the brakemen allowed these young men and quite a number of others to board the train. The testimony shows that the brakemen found these young men on the train and consented for them to remain there after paying a trifling sum for permission to ride, and that they let others board the train along the route. They directed the young men to get into furniture car, which the proof shows was about eighteen inches wider than an ordinary car. Whenever a new man would board the car, one of the brakemen would come in and require him to pay fifty cents to ride. The car was crowded and it was a warm day in June and and the brakemen informed the men in the car that they might leave the side doors open except while they were passing through a town. About a mile east of Magazine, Arkansas, there is a bridge about seventy-five feet long with an iron railing or side structure about three feet high. The extra width of the furniture car in which the

young men were riding, of course, narrowed the space between the side of the car and the structure of the bridge. Williams and Graham and another one of the young men were sitting in the door with their legs hanging down the side when the train went over the bridge at a speed of about thirty miles per hour, and their feet and legs struck against the bridge structure and the injuries heretofore mentioned were inflicted. Graham was jerked from the car and instantly killed. Williams' leg was broken and he was otherwise injured.

The testimony shows that one of the brakemen was in the car where the boys were sitting in the door about fifteen minutes before the train reached the bridge. The act of negligence set forth in each of the complaints consists of the failure of the brakemen to warn the men of the danger of sitting with their legs hanging out of the door. According to the undisputed evidence in the case, it is a violation of the rules of the company for the trainmen to accept passengers on a through freight train, and that the men who rode on the train, including the injured parties mentioned, were aware of this fact. In other words, they knew that they had no right to ride on the train. The fact that only a trifling sum was exacted of them makes it plain that they knew that the trainmen were not acting in good faith or with authority to allow passengers to ride on the train. That being true, they were no more than trespassers, and the servants of the defendant company owed them no duty except to refrain from injuring them by any act of negligence committed after discovery of their perilous position. The servants of the company were under no legal duty to warn these trespassers of the hazards of that mode of travel, but, on the contrary, the trespassers assumed the risk of all the dangers incident to the situation.

As stated by Judge RIDDICK in a similar case (*St. Louis, Iron Mountain & Southern Ry. Co.* v. *Read,* 76 Ark. 106), the liability of the company, if it exists at all, must rest upon the wanton and wilful act of employees

after discovering the peril of the trespasser. In that case, as in this, the injured party was wrongfully riding on a through freight train, and the injuries resulted from a collision caused by the negligence of the servants of the company, but this court held that there was no liability on the part of the company for the injuries so inflicted. So, in the present case, if it be conceded that there was negligence on the part of the company in failing to provide additional space between the sides of the passing cars and the bridge structure, that was not such negligence as would render the company liable to a trespasser on the train to whom it owed no duty except, as before stated, to refrain from acts of wilful negligence after discovering that the trespasser was in danger. Under no view of the law can it be held that the company's servant's, under the circumstances described, owed the trespassers on the train the duty of instruction or of warning them of the dangers of the journey.

The judgment of the circuit court was, therefore, correct, and the same is affirmed.