REED *v.* BALDWIN ET AL., TRUSTEES, MISSOURI PACIFIC RAILROAD COMPANY.

4-4245

Opinion delivered March 30, 1936.

492

*Glover & Glover,* for appellant.

*R. E. Wiley* and *Richard M. Ryan,* for appellees.

BAKER, J. Charles H. Reed, appellant, sued the appellees to recover damages for personal injuries alleged to have been received by him on August 23, 1934, at Batesville, Arkansas. He alleges that while he was waiting for the arrival of a passenger train for which he had bought a ticket to Bowie, Texas, a freight train passed the passenger shed near to which he was standing, and that there was hanging or swinging on the side of one of the boxcars in the freight train a piece of timber, which swung out and struck him upon the head, knocking him down and severely injuring him. At the time of his injury he was looking at a man on top of the freight train, and this piece of timber struck him before he had knowledge of his danger. The defendants denied every allegation of the complaint and alleged negligence on the part of the plaintiff as the cause of his injuries. Reed in his testimony says that he bought his ticket about 2:00 o'clock in the afternoon; that the passenger shed of the railroad company was located about four blocks from the regular depot, and that this passenger shed was in use during the summer season; that he and some of his companions went from the depot, where the ticket was purchased, to the passenger shed, and that as they approached the passenger shed he was near or along the side of the railroad track when the freight train going north passed him, and he was struck by the swinging timber.

There is a considerable volume of testimony. That portion introduced on behalf of the appellant tending to show negligence and liability of the appellees is directly in conflict with that of a considerable number of other witnesses who say they were present and saw the occurrence causing injuries alleged to have been suffered by Reed. This proof taken most strongly in favor of the appellees is to the effect that appellant attempted to catch

or hold to the passing freight train, and was jerked or thrown on account of the speed of the train with some violence upon the ground alongside or near the tracks. There is also some testimony to the effect that he and his companions had been at a beer parlor situated near the railroad tracks, and that after his injury they returned to this same place where they were again engaged in drinking, and while there discussed and planned the contemplated suit for damages. The doctor who treated Reed immediately after his fall testified to the effect that Reed was very slightly injured, having a small scratch on top of his head and was not complaining otherwise. It is equally true that physicians who treated Reed within the next day or two found some rather bad bruises upon his back and hip, and a somewhat more severe cut upon his head than that described by the physician who saw him immediately after the fall.

We are bound, however, by the most favorable conclusion that may be arrived at in support of the verdict rendered by the jury, which decided all the material issues against Reed's contentions.

The appellant argues that the verdict of the jury was against the preponderance of the evidence. That may be true, but that is a matter we are not permitted to decide. The jury has already settled that controversy. We can only determine whether or not there was substantial evidence to support the verdict. We must hold that there was.

If Reed was injured according to testimony given by some of the witnesses to the effect that he was attempting to catch a passing train, and not by a swinging timber, he certainly had no right to recover, and is not entitled here to a reversal upon that account. The only question here is whether the court properly submitted the issues to the jury. It, therefore, becomes unimportant and unnecessary as to the great mass of conflicting testimony given upon trial of the case. Such portion of the same as a discussion may require as to alleged errors will be set forth as the matters are presented.

One of the chief objections urged by appellant was to instruction No. 4-A. This was an instruction given on behalf of the defendants, and at their request. That

instruction is as follows: "The court instructs you that the defendants are not liable for an injury that is not the direct cause or result of their negligence. In order for negligence, if any, to be the direct cause of an injury, it must be the proximate cause; and in order for negligence to be the proximate cause of the injury, it must appear from the evidence that the injury was the natural and probable consequence of the negligence or wrongful act complained of, and that it could have been foreseen in the light of the impending circumstances. You are therefore instructed that unless you find and believe from the preponderance or the greater weight of the testimony that the negligence of the defendants, or their agents, servants, or employees was the proximate cause of the injury, if any, to the plaintiff, then your verdict will be for the defendants."

The objection urged in appellant's brief is to the effect that the instruction was argumentative; that there was no evidence upon which it might be based, and that it ignored the law of comparative negligence; that it was in conflict with other instructions. The abstract furnished us does not show what, in fact, were the objections made. These matters, as above stated, are set forth in appellant's argument. However, we do not think that the instruction is open to the objections made to it. It clearly states a rule for the determination of negligence. It is not argumentative, nor can it be said to be abstract.

There was a great mass of testimony offered on behalf of the appellant tending to show negligence of the railroad company, its agents and employees, and it seems that the instruction had only one object in view, and that was to present to the jury for their determination the question of such alleged negligence. The matter of negligence of the appellant for purposes of comparison with that of the railroad company was not mentioned. In fact, so far as that instruction is concerned, whether the appellant was negligent or not, he had a right to recover if the appellees, or any of them were negligent, and such negligence directly caused the injuries. Comparative negligence affects the amount of the recovery ordinarily rather than the right of recovery. It may prevent a re-

covery only when the negligence of the injured party is equal to or exceeds that of a corporation causing the injury.

Appellant objected to instruction No. 7-A, which reads as follows: "You are instructed that if you find and believe from the evidence in this case that the plaintiff, Chas. H. Reed, saw the freight train coming then he had no right to go on or near the defendants' tracks or near the train, and if he did this, or if he failed to use such care as an ordinary prudent person would have used for his own safety at the time the train was passing, then he was guilty of negligence and you should so find."

Although we are unwilling to approve the instruction in its present form, it is not open to the objections made to it by the appellant. Of course, if there were an approaching freight train Reed did not have a right to go upon the railroad tracks in the face of danger and attempt to hold the railroad company liable for the consequences. In such a case the railroad owed him no duty except not to hurt or injure him wantonly or recklessly, but we cannot say that he did not have a right to go near the railroad tracks or the train. This is because the word "near" is somewhat indefinite, but it was no doubt used by the trial court in the sense that he must not go so close to the tracks or the train that he would be in danger of being struck or to come in contact with some part of the train. No special objection, however, seems to have been urged on account of this uncertainty or indefinite statement of the law. Appellant does urge that he had gone to the place or point where he was injured to take passage over the road on the passenger train to Bowie, Texas; that he had a right to go there. It is true, he testified, that he bought his ticket about 2:00 o'clock, and that the time of his injury was about 2:30, and that he was near the point or place where he would enter upon the passenger train which was not expected, however, until approximately three or four hours later. That question, however, is taken care of in another instruction, wherein the proposition is submitted to the jury as to whether or not he was a mere trespasser or a licensee. Appellant urges that this instruction was equal to a peremptory instruction for the de-

fendants. That is not correct. The question that was submitted to the jury for its determination under this instruction was whether the plaintiff was guilty of negligence. Being guilty of negligence, however, would not have necessarily prevented a recovery. Appellant also argues that the instruction should have told the jury that its findings upon this matter must be by a preponderance of the evidence.

The court in another and separate instruction told the jury about the burden of proof and explained what was meant by a preponderance of the evidence, and this instruction applied to the whole case. We cannot think the jury misunderstood a matter so well-known, and so frequently repeated that people generally are well acquainted with the principle; that one asserting or relying upon an affirmative statement, whether made by plaintiff or defendant, must ordinarily establish such alleged fact by a preponderance of the evidence. However, it is necessary that even commonplace matters, such as this, be stated in all cases, though there is no necessity for repetition in any particular case.

Defendants objected to instruction No. 8, which presented to the jury the question of whether Reed was making use of defendant's platform or pathway, near or at its tracks, at the time of the injury when he had no business with the company, and instructed the jury under what conditions he might be found to be a trespasser, and instructed if he were such the operators of the train owed him no duty, except, after discovering him in position of peril, not to injure him wantonly or recklessly. The objection made to this instruction was that at the place where he says he was injured he was upon a public street, and that there is no evidence that he was in a perilous position, and he argues that he was in no danger except for the fact that the operators of the railroad had left swinging the piece of timber which struck him, knocked him down and caused the injury. To make that argument, however, the appellant must assume that his injury was caused in the manner in which he alleged it occurred. His allegation as to the facts, however, was disputed, and under the evidence the jury could have well found that there was no swinging timber that struck

him, but that he had walked so closely to the railroad track as to be struck by some part of the moving train, even if the jury did not find, as some of the witnesses say the matter occurred, that the appellant was thrown or knocked down when he attempted to catch on the side of the moving train which was then going perhaps twenty-five or thirty miles an hour. This instruction merely submits to the jury for its determination the theory of the defendants as to the manner in which the injury occurred, and the instruction explained the duties or obligations of the railroad or its operators to one who is a trespasser, provided he should be found to be such. If the jury believed the testimony of the ticket agent, who sold Reed his transportation to Bowie, Texas, that is, that Reed did not buy his ticket until about 6:00 o'clock in the afternoon, then Reed has in fact been shown to have had no business at the time and place of his alleged injury. However, even under Reed's own contention that he had bought a ticket, and was approaching a place where he would embark upon the train, some two or three hours later, he was at most a mere licensee.

"In many cases before the lookout statute, which does not apply here, this court has held that a railroad company owes trespassers and bare licensees no affirmative duty of care, and only the duty not to wilfully or wantonly injure them, or the duty to exercise ordinary care not to injure them after discovering their peril and inability to escape. To bare licensees railroad companies owe no affirmative duty of care, for such licensees take their license with the concomitant perils." See cases cited. *Arkansas Short Line* v. *Bellars*, 176 Ark. 53, 62, 2 S. W. (2d) 683. A headnote reads: "A licensee or trespasser cannot recover for injuries caused by mere acts of negligence, but must show wilfulness and wantonness in the operation of the train." *St. Louis & San Francisco Ry. Co.* v. *Bley*, 168 Ark. 814, 271 S. W. 455.

The only other objection urged is that counsel for appellees made an improper argument relative to the fact that the suit was brought in Hot Spring county rather than in Batesville, Independence county, where the injury occurred. This was not prejudicial. There is

498

another proposition—that the court should have excluded testimony attempting to impeach the plaintiff, and also some of the witnesses. The record before us expressly shows that the court did not permit the impeachment of the plaintiff, appellant here, who was not a resident of Batesville, but did permit the impeachment of other witnesses. It may be that the appellant was not prepared to meet the issue upon impeachment, but at least there was no error in these matters as they are presented to us. These matters are not abstracted or presented as having been brought forward in the motion for a new trial.

These are not all the matters that are taken up and discussed in the voluminous brief filed here. The others, however, are of such minor importance that we do not feel warranted in an attempt to discuss or dispose of them.

It must suffice to say that we have examined every matter presented upon the appeal, and we find no error.

The judgment is affirmed.