MISSOURI PACIFIC RAILROAD COMPANY *v.* HANCOCK AND BUCHANAN.

4-4997

Opinion delivered March 28, 1938.

912

*Thomas B. Pryor* and *W. L. Curtis,* for appellant.

*Thomas P. Holt* and *D. H. Howell,* for appellees.

BAKER, J. This is the second appeal of this case. The first is reported as *Missouri Pacific Railroad Company* v. *Hancock,* 187 Ark. 1007, 63 S. W. 2d 973. The statement made in that first appeal may be taken as a statement in the instant case. There is no real or essential difference except in the instant case the error complained of in the former appeal and upon which it was reversed does not appear.

Hancock testified that he and his traveling companion, Buchanan, were desirous of returning to their homes in Oklahoma and in the railroad yards of North Little Rock, at night, they accosted someone and asked about the time they might catch a freight train going from North Little Rock to Van Buren and were advised that the train would leave about 10:00 o'clock. The conductor upon the train upon which they did ride testified that someone talked to him in the railroad yards and asked about what time the train would leave. Hancock also testified that before daylight the next morning, after leaving North Little Rock at 10:00 o'clock at night, he talked with a man who looked like a brakeman and who was carrying a lantern, such as they carry, and asked if they had reached Van Buren; that the brakeman answered that they were then about forty miles from Van Buren and it would take about an hour and fifteen minutes to get to that point. At the time he talked with that

man he was standing in the door of a box car where he and his companion had ridden during the night. He said this man with whom he talked climbed aboard the train and gave the starting signal. This testimony is denied, but the jury had a right to believe it and they found it to be true, so it must be said in consideration of the jury's verdict that the employees of the train, or at least some of them, knew that Buchanan and Hancock, though they did not know their names, were riding in a box car.

We think there is only one conclusion to be reached about how this accident occurred, that is that there was a hot box, or journal upon one of the box cars, seven or eight cars back, or removed from the engine. Hancock testified about seeing this smoking and blazing journal box. Several other witnesses testified to the same effect. Among the number of those who saw it was the station agent at Alma, who gave a signal to the operators of the train. Others attempted to signal the engineer, fireman and conductor. This hot box was upon the left-hand side of the train as it moved forward. The railroad employees testified they did not see it. The fireman, whose position was upon that side, testified it was one of his duties to observe or watch to the rear, testified he did not see it. Some of the brakemen testified that they were in the cupola of the caboose, looking forward on the left-hand side and did not observe either the smoke or the fire from the hot box. The third or swing brakeman testified that for a time, at least, he rode in what is called the dog house, the small box-like structure on top of the tender. From this position he looked back over the train and that it was his duty to observe anything wrong in the operation of the train. Just a short distance out of Van Buren this journal burned so as to break off and the wreck occurred in which young Buchanan was killed and Hancock somewhat seriously injured.

Some witnesses testified that flames from this hot box were two or three feet long. It is, also, shown that for some distance before the point was reached at which the accident occurred the railroad tracks were curved which gave those, who were in position to observe the

condition of the train, both from the front and rear, better opportunities of seeing this fire or smoke from the hot box.

Several witnesses testified to this condition in addition to the plaintiff, Hancock, who also stated that from the door of the box car, where he and Buchanan were riding, he could see the engineer and fireman in the engine cab. This was after daylight and perhaps only a short time before the wreck which occurred about 7:00 o'clock in the morning. It is hardly conceivable that the conditions as testified to by these numerous witnesses as to flames and smoke were seen by the plaintiff and his companions, including Buchanan and others who had gotten into the car before the wreck and persons along the railroad tracks and at stations, and at the same time not be seen by the railroad employees.

It is argued, perhaps with some degree of reason, that the railroad employees were attempting to run the last few miles, though the hot box was discovered, and get into the yards of Van Buren where the yard crew would have to take care of the train with its hot box, rather than the crew in charge of the train upon the road.

Witness Duke, who was both a brakeman and conductor, though working as a brakeman, upon this particular train, testified ''that it was the duty of the entire crew to fix a hot box on a train before it reached the terminal and that it was the duty of the car men to fix it at the terminal; if this car would have reached the yard, the car men would have fixed the hot box and if it had gone a half mile further the train crew would not have had to fix it.'' So the jury might well have found, from the showing made, that the operatives of the train knew of this hot box with the blazing, smoking bearings, but chose to ignore it because there was only a short distance to go after it was discovered.

The appellant has submitted to us numerous decisions and authorities both from our own court and other jurisdictions, bearing upon the question of liability under the facts and circumstances proven. There is no necessity at this time for a discussion of any of them, as the

law in this case was determined upon the former appeal. *M. P. Rd. Co.* v. *Hancock, supra.*

It can make no difference now whether the court, or even a majority agrees with the announcements made in the former decision. The law proclaimed there was not only binding at that time, but under the same facts and conditions as they appear now the same declaration of law is applicable.

Appellant argues the insufficiency of the evidence to sustain the judgment under several different headings, the principal one of which is that it properly moved for a directed verdict.

It is also argued that the appellant demurred to the evidence. It is also argued that the evidence is not sufficient to sustain the verdict.

Although our courts do not recognize the practice of a demurrer to the evidence, the same result is reached by appellant's other objections and the request for the directed verdict if that remedy were available at all. It is not, however, under the circumstances as before stated.

The only other question argued seriously is that the judgment in favor of the plaintiffs had written into it the insertion of a lien against appellant's property. The statutes justify the lien.

Appellant, incidentally, also calls attention to the fact that the verdict of the jury for George Buchanan and Flo Buchanan, appellees, was for the benefit of the estate of the deceased son, Willis Buchanan, who was killed in the same wreck in which Hancock was injured. That matter was not raised before the trial court in any manner.

There seems to be no objection to the form of the verdict. Attention of the trial court is not called to this particular matter in the motion for new trial. It is too late to raise it here for the first time. Although this case must be affirmed upon the showing made here, the writer and Justices McHaney and Donham desire to disclaim approval of the application of the law of discovered peril as applied in this case, but is impelled to do

so on account of the announcements in prior decision and only on that account.

The judgments are affirmed.

GRIFFIN SMITH, C. J., dissents.

McHANEY and DONHAM, JJ., concur.

DONHAM, J. (concurring). This is the second appeal of these cases, the opinion on the first appeal being reported in 187 Ark. 1007, 63 S. W. 2d 973. I am concurring in the majority holding solely on the ground that the law as announced on the first appeal is the law of the case on the second appeal. Since on the first appeal it was held to be a jury question as to whether or not the railroad company is liable, we must still hold under the same, or substantially the same, evidence that the question of liability was one for the jury. The jury having found for appellees, under correct instructions, not questioned here, we must affirm the judgment.

The court held on the former appeal that the railroad company is liable on the ground of discovered peril. The record reveals that Archie Hancock, eighteen years of age at the time of the accident resulting in his injury, and Willis Buchanan, eighteen years of age, were trespassers on one of appellant's freight trains. They boarded the train in North Little Rock about ten o'clock at night intending to go to Van Buren. As the train stopped at stations, other persons got into the car in which Hancock and Buchanan were riding. When they arrived at the station of Mulberry there were eight persons in the car. Hancock and Buchanan, it seems, had gone to sleep; and when the train arrived at Mulberry Hancock awoke and asked a brakeman who came along going toward the rear end of the train whether or not they had arrived at Van Buren. The brakeman told him they had not, that it was about forty miles to Van Buren and that it would take about an hour and fifteen minutes to get there. This was sometime before daylight. The evidence shows that a "hot box" developed two car lengths ahead of the car in which Hancock and Buchanan were riding. The evidence is sufficient to show that one of the brakemen knew that the "hot box" had developed. Of course, it must be

assumed that the brakeman knew there was some danger in operating the train with a "hot box." Just before reaching Van Buren the train wrecked. The record is sufficient to show that the wreck occurred because of the "hot box" that had developed and of which at least one of the members of the train crew had knowledge. Buchanan was killed and Hancock was seriously injured.

This court held on the former appeal that the evidence as here set out warranted a submission of the cause to the jury upon the doctrine of discovered peril. It is admitted that Hancack and Buchanan were trespassers; and that they had no right whatever to be on the train. I think that this is not a case wherein the doctrine of discovered peril will apply; and I, furthermore, think that there is no more liability for the death of Buchanan and the injuries to Hancock than there would have been had the wreck been caused by a defective coupling or some other defect in the cars or engine to which the cars were attached and of which defect some member of the train crew had notice.

In the case of *St. Louis, Iron Mountain & Southern Railway Co.* v. *Reed,* 76 Ark. 106, 8 S. W. 836, 113 Am. St. Rep. 78, this court said: "He (plaintiff) was injured by a collision which the evidence shows was the result of carelessness, but was not the result of wanton or wilful negligence. On the whole case, we are convinced that it would be unjust to compel the company to pay damages for the injury to plaintiff which was caused by his getting on a train not intended for passengers, in violation of the rules of the company."

In the case of *Williams* v. *Chicago, Rock Island & Pacific Railway Co.,* 139 Ark. 562, 215 S. W. 605, this court said: "As stated by Judge RIDDICK in a similar case (*St. L., I. M. & S. Ry. Co.* v. *Reed,* 76 Ark. 106, 88 S. W. 836, 113 Am. St. Rep. 78), the liability of the company, if it exists at all, must rest upon the wanton and wilful act of employees after discovering the peril of the trespasser. In that case, as in this, the injured party was wrongfully riding on a through freight train, and the injuries resulted from a collision caused by the negligence of the servants of the company, but this court held that

there was no liability on the part of the company for the injuries so inflicted. So, in the present case, if it be conceded that there was negligence on the part of the company in failing to provide additional space between the sides of the passing cars and the bridge structure, that was not such negligence as would render the company liable to a trespasser on the train to whom it owed no duty except, as before stated, to refrain from acts of wilful negligence after discovering that the trespasser was in danger. Under no view of the law can it be held that the company's servants, under the circumstances described, owed the trespassers on the train the duty of instruction or of warning them of the dangers of the journey.''

In the case of *St. Louis-San Francisco Railway Co.* v. *Bley,* 168 Ark. 814, 271 S. W. 455, which involved an action for personal injury by one boarding a train with the conductor's permission to ride to the nearest station where he intended to buy a ticket, this court, quoting from the case of *Kruse* v. *St. L., I. M. & S. R. Co.,* 97 Ark. 137, 133 S. W. 841, said: ''We deem it to be equally sound in justice to say that, when a person enters a train without any intention to pay fare, but under a collusive agreement with the conductor to ride free in violation of the rules of the company, and does not pay any fare, he does not legally become a passenger, and the railway company is not responsible for his safety as a passenger. Quoting from the language of Judge RIDDICK in the Reed case, *supra,* if, under those circumstances, he 'is carried safely to his destination, he gains that much at the expense of the company. On the other hand, if an accident happens, and he is injured, there is no reason or justice in requiring the company to pay for his injuries, unless they have been wantonly or wilfully inflicted.' The authorities which sustain the proposition are numerous.''

In the Bley case, the court further said: ''There was some testimony that, in starting and in stopping the train as the various switches were passed, the stops were made suddenly and the starts were made violently, and this testimony may have been sufficient to support a finding of negligence in the operation of the train. But there

was no testimony whatever that there was any element of wilfulness or wantonness in the operation of the train, and, if appellee was a mere licensee and not a passenger, he is in no position to complain of the mere acts of negligence—if such there were—in switching the train around the wye."

In the case of *Reed* v. *Baldwin, et al., Trustees, Missouri Pacific Railroad Co.*, 192 Ark. 491, 92 S. W. 2d 392, this court held, quoting from the fifth headnote thereto: "A licensee cannot recover for injuries caused by mere acts of negligence, but must show wilfulness or wantonness on the part of the defendant, for licensees take their license with its concomitant perils."

There is nothing whatever in the record in the instant case to show that there was any element of wilfulness or wantonness in the operation of the train, nor do I think that there is any evidence in the record to show that the trespassers on the train who were injured by the wreck were discovered in a position of peril in time to have avoided injury to them by the exercise of ordinary care after such discovery. Before the doctrine of discovered peril will apply, if indeed it ever applies, so as to require the exercise of care on the part of the train crew to protect a trespasser on the train from injury, his peril must have been imminent and this fact must have been known to and recognized by those upon whom the exercise of such care is alleged to have rested. Of course, if one being a trespasser on the train is wilfully or wantonly injured by a member or members of the train crew in the operation of the train or otherwise, the railroad company will be liable, if the acts of wilfulness or wantonness are committed by its employees in the course of their employment. The rule is well stated in Elliott on Railroads, 3rd Edition, Vol. 3, § 1793, as follows: "A railroad company owes trespassers no contract duty. Indeed, as already stated, the general rule is that it owes them no duty except not to wilfully injure them, and this rule applies to those who are attempting to steal a ride or otherwise trespass upon the company's cars. They are not in a position to invoke the doctrine of apparent authority and can only hold the company liable

for acts of its employees done within the scope of their actual authority, express or implied.''

Members of the train crew in the instant case, who, it is alleged, knew of the peril to the trespassers on the train, evidently were oblivious of any imminent peril to these trespassers. These employees were on the same train as the trespassers; and if the trespassers were in imminent peril because of danger of the train's being wrecked, the employees themselves likewise were in imminent peril. I think it may be assumed that if the train crew had believed they were in imminent peril they would have stopped the train and thus have avoided the risk of wrecking it. The most that can be said about the conduct of the train crew is that they may have been negligent in operating the train with a ''hot box.'' It certainly cannot be said that they discovered and recognized any imminent peril to themselves or the trespassers. If they had made such discovery, the love of life and the desire to escape injury would have impelled them to take action for their own protection. It is my opinion that this simply is not a case where the court should have attempted to apply the doctrine of discovered peril. The appellees should not have been permitted to recover in the first instance. Having recovered, their cases should have been dismissed on the first appeal. They were not dismissed, however, and the law of the case on the second appeal is that announced on the first appeal. Regarding this rule as binding upon the court, I concur with the majority in affirming the judgment. But it is only for the reason stated that I do so.

I am authorized to say that Justice McHANEY concurs with me in this opinion.