MISSOURI PACIFIC RAILROAD COMPANY *v.* SANDERS.

4-5083

Opinion delivered May 23, 1938.

*Thomas B. Pryor, H. L. Ponder, Jr.,* and *H. L. Ponder,* for appellants.

*Griffin & Griffin* and *J. Paul Ward,* for appellee.

DONHAM, J. This is the second appeal of this case. The opinion on the first appeal was rendered May 24, 1937. It is not reported in a bound volume of the Arkansas Reports, but will be found in 106 S. W. 2d 177. A

clear and concise statement of the facts was made by the court on the former appeal, and since, by order of the court, the opinion was omitted from the last published volume of the court's opinions as being of no value as a precedent, and since the evidence shown by the record on this appeal is substantially the same as that on the former appeal, we here set forth said statement of facts in full:

"Appellant alleged and testified that he was severely injured in September, 1935, as the result of a fall occasioned through negligence of a fellow servant. The trial court ruled that proof offered on appellant's behalf was not sufficient to establish liability, and so instructed the jury.

"The accident occurred near Vineland, Missouri, and suit was brought under the Federal Employers' Liability Act. Appellant was working with others in constructing a large form into which concrete was to be poured in the process of building bridge piers. The lining of the structure was made of one-inch 'lagging' laid horizontally and supported by vertical 2 x 4 studs. This was reinforced externally by 4 x 8 horizontal timbers 18 feet long, called 'wales,' and these heavier timbers, in turn, were 'tied' with steel rods extending from outside-to-outside, through the wales and lagging. The wales were not long enough to reach the full length of the form, and were 'spliced' by placing a short piece end-to-end with a longer piece. In order to give strength and rigidity, and to overcome defect incident to the use of shorter timbers, the wales were laid two-ply so that the 'breaks,' or 'joints' were covered by overlapping alternate timbers. When each complement was laid, the result was that two 4 x 8's were bolted side by side, giving a complete 8 x 8 wale.

"The first and second wales had been finished with the crew working from the ground. Thereafter it was necessary for one man to work from the side of the form placing the timbers. For convenience in temporarily placing the wales, brackets were nailed to the 2 x 4 studs

at convenient distances along the side of the form, upon which the heavier timbers were laid until bolted.

"At the time appellant experienced his misfortune, he was working at a point about fourteen feet from the ground. He was standing on a completed wale, assisting in the placing of timbers on the bracket above. The first 4 x 8 for the fourth wale had been put in position, but not bolted, when the second timber was drawn up by a fellow servant named Cook, operating from the top of the form by means of a rope. Appellant testified that he had followed the timbers up, and while standing about six feet from the end of the form on the bolted 8 x 8 platform, he held to one of the 2 x 4 studdings with his right hand. While in this attitude one end of the timber which was being drawn up by Cook caught under the bracket near appellant, the other end then extending to a point beyond the west end of the form, where a fellow servant named Robertson was stationed. Appellant says he undertook to disengage the timber from the bracket, and as he did so Robertson negligently jerked the other end; that he (appellant) grabbed for safety and caught the wale that had been temporarily placed on the brackets; that not having been bolted, it turned, and he fell to the ground and sustained serious injuries.

"Appellant admitted that he had been in the bridge building service about four years; that he was experienced in building forms, and knew all about the work.

"We think there was sufficient testimony for submission to the jury. If appellant's claim that Robertson negligently manipulated the timber is sustained, recovery would lie. Obviously, appellant was in a precarious situation, and a high degree of care was required of those assisting him. Appellant said: 'I had the timber out this way (indicating) and this other wale was next to my shoulder. It wasn't fastened, and when he (Robertson) jerked that wale to him, why, it jerked me loose and I hallooed at him and grabbed at the first waling that had been put up there, and it rolled over and I fell . . . . Robertson grabbed the timber and jerked it around toward him . . . That jerked me loose from the studding I was holding on to.' "

It is first contended by appellants that under the proof appellee was not entitled to recover; and that the court erred in refusing to give appellants' requested instruction No. 1, directing a verdict for appellants.

The court held on the first appeal on the question of liability that there was sufficient testimony for submission to the jury, stating: "If appellant's claim that Robertson negligently manipulated the timber is sustained, recovery would lie." Since the court held on the first appeal that the evidence was sufficient to go to the jury on the question of liability, on the same, or substantially the same, evidence, said holding is the law of the case on the second appeal. Therefore, appellants' first contention that the evidence is not sufficient to sustain the verdict of the jury is not well taken. *Missouri Pacific R. R. Co.* v. *Hancock and Buchanan,* 195 Ark. 911, 114 S. W. 2d 1076.

It is next contended by appellants that appellee was barred from recovering on account of his own contributory negligence. A sufficient answer to this contention is that the case is one arising under the Federal Employers' Liability Act. Under this act, contributory negligence is not a defense. Its only effect is to reduce the amount of damages in proportion to the negligence attributable to the injured employee. The applicable portion of § 3 of the act, being § 53, Title 45 USCA, p. 379, is as follows: "In all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this chapter to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee."

It is next contended by appellants that the court erred in giving to the jury instruction No. 6 requested by the appellee. This instruction was to the effect that if the jury found from a preponderance of the evidence that the appellee, while engaged in the scope of his employment in guiding a wooden wale which was being

drawn up the side of a pier form, and while he was standing on the side of the form some twelve or fourteen feet from the ground trying to disengage the wale from a bracket against which it had lodged, a fellow employee, engaged in assisting him in placing the wale, carelessly, negligently and without due regard to appellee's safety, suddenly pulled or jerked his end of the wale, causing the end being held by appellee to be jerked out of his hands or away from him, thereby causing appellee to lose his balance and to fall, the jury would be authorized to return a verdict for appellee. There was only a general objection to this instruction. Appellants argue in their brief that the instruction was a comment upon the evidence and that, therefore, the province of the jury was invaded. The instruction is not open to this objection. The instruction did ignore the defense of assumed risk. But, since this objection is not now urged by appellants, it will be held to be abandoned. However, if this were not the case, the instruction would not be erroneous on the ground that it ignored the defense of assumed risk, because the record shows, without question, that if the employee jerked the wale, one end of which was being held by him and the other end by appellee, the jerk was so sudden that appellee had no notice that he was going to jerk it. Since appellee did not know that the negligent act would be committed, as a matter of law, he did not assume the risk.

It is next contended that the court erred in refusing to give appellants' requested instructions Nos. 1, 2, 11, 12, 14 and 15.

Instructions Nos. 1 and 2 were peremptory in form and, therefore, properly refused.

Appellants' requested instructions Nos. 11 and 12 were covered by other instructions given by the court and, therefore, it was not error to refuse to give these instructions.

Appellants' requested instruction No. 14 was to the effect that appellee assumed all risks of his employment and that same constituted a complete bar to any recovery on his part, unless there had been a violation by ap-

pellants of a federal statute enacted for the safety of employees. In other words, according to this instruction, unless some federal safety appliance act had been violated, appellee would have no right to recover. Such is not the law, and the court did not err in refusing said instruction.

Appellants' requested instruction No. 15 was to the effect that appellee, as a matter of law, was not engaged in interstate commerce at the time of his injury and that if entitled to recover at all, must recover under the Missouri Workmen's Compensation Law, which was effective and in force on the second day of November, 1926. Of course, this requested instruction was erroneous. We think the record shows conclusively that appellee was engaged in interstate commerce. He was engaged in the construction of a bridge on a line of railroad track used in interstate commerce. Certainly, it would have been error to have instructed the jury, as a matter of law, that appellee was not engaged in interstate commerce.

The final contention of appellants is that the verdict is excessive and was the result of passion and prejudice. We do not find that the verdict was the result of passion and prejudice. If we were of this opinion, it would be necessary to reverse the case for a new trial.

The proper amount of damages is a question that has given us much concern. As we have heretofore held in many cases, the courts have not laid down, and, as a matter of necessity, cannot fix a general rule for an award of damages in cases involving pain and suffering. The amount of the damages must depend upon the circumstances of each particular case—that which would be excessive in one case would be wholly inadequate in another, and, yet, there must be a limit to the award of damages. While the entire court agrees that appellants are liable, a majority of the court has come to the conclusion that an award in excess of $7,500 would be excessive. If the appellee, within fifteen days, will enter a remittitur for $5,000, the judgment will be affirmed; otherwise, the judgment will be reversed, and the cause remanded for a new trial.